**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**
_____

**No. 99-10255**
_____

**WENDY J. AHRENS,**

**Plaintiff-Appellant,**

**versus**

**PEROT SYSTEMS CORP.,**

**Defendant-Appellee.**
_____

**Appeal from the United States District Court**
**for the Northern District of Texas**
_____

March 3, 2000

Before JONES, BARKSDALE, and DENNIS, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Summary judgment having been awarded Perot Systems Corp., primarily at issue is whether judicial estoppel precludes Wendy J. Ahrens' claim of discriminatory discharge by Perot Systems, in the light of her claim, in an earlier action, of discharge because of tortious interference with that employment. We **AFFIRM**.

I.

Perot Systems hired Ahrens in 1992. She took a medical leave of absence in November 1994, and was released to return to work the following February.

That November, her supervisor, Howard, told her that, because of the 1996 budget, it was possible that Ahrens' role would change, and suggested that she look for other positions. On 1 December, Howard discharged Ahrens.

That same day, Ahrens filed an action in state court against Image Sciences, Inc. (a former employer), Andereck (its president), Morton (apparently its employee), International Business Machines Corporation (Image Sciences' co-defendant in an action in which Ahrens was deposed), Cravath, Swain & Moore (law firm which represented IBM), and Chesler (Cravath attorney who allegedly contacted Perot Systems in January 1995 and requested Ahrens' termination). She claimed, *inter alia*, that IBM, Chesler, and Cravath had tortiously interfered with her employment with Perot Systems.

In April 1996, Ahrens filed a discrimination charge with the Equal Employment Opportunity Commission, in which she swore that Perot Systems discriminated against her on the basis of her gender by discharging her in December 1995. In early May, she received a notice of right to sue letter for that charge. That July, she filed this action in federal court against Perot Systems, claiming gender discrimination discharge, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

Shortly before filing this action, Ahrens filed a second EEOC charge, in which she swore that Perot Systems discharged her because it regarded her as disabled. That August, she received a notice of right to sue letter for that charge. That November, she amended her complaint to add that her discharge was also motivated by disability discrimination, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (ADA).

Perot Systems moved for summary judgment, asserting, *inter alia*, that Ahrens was judicially estopped from pursuing her discrimination claims because of sworn statements made during the earlier-filed tortious interference action; and, alternatively, that she could *not* prove that her discharge was motivated by either gender or disability discrimination.

Summary judgment was granted Perot Systems in February 1999, on the judicial estoppel basis, the court concluding that Ahrens' claim in this discrimination action was inconsistent with that asserted previously in the interference action, and that the district court in the latter had relied on her inconsistent position there in granting her motion to remand that action to state court. Alternatively, such judgment was awarded Perot Systems because Ahrens had *not* created a material fact issue for her discrimination claims.

## II.

Ahrens challenges both bases for the summary judgment. Because we agree with the district court on judicial estoppel, we do *not* reach its alternate ruling.

A summary judgment is reviewed *de novo*, applying the same standard applied by the district court. *E.g.*, **Horton v. City of Houston, Tex.**, 179 F.3d 188, 191 (5th Cir.), *cert. denied*, ___ U.S. ___, 120 S. Ct. 530 (1999). Such judgment is proper if the summary judgment record, viewed in the light most favorable to the non-movant, establishes that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as

3

a matter of law". FED. R. CIV. P. 56(c); **Horton**, 179 F.3d at 191.

The district court's invocation of judicial estoppel is reviewed for abuse of discretion. **In re Coastal Plains, Inc.**, 179 F.3d 197, 205 (5th Cir. 1999), *cert. denied*, ___ U.S. ___, 120 S. Ct. 936 (2000). "Judicial estoppel applies to protect the integrity of the courts—preventing a litigant from contradicting its previous, inconsistent position when a court has adopted and relied on it." **Afram Carriers, Inc. v. Moeykens**, 145 F.3d 298, 303 (5th Cir. 1998), *cert. denied*, 525 U.S. 1141 (1999). It "is a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position". **Coastal Plains**, 179 F.3d at 205 (internal quotation marks and citation omitted). "Most courts have identified at least two limitations on the application of the doctrine: (1) it may be applied only where the position of the party to be estopped is clearly inconsistent with its previous one; and (2) that party must have convinced the court to accept that previous position." **Id**. at 206.

A.

Ahrens maintains that neither of the two bases for judicial estoppel is satisfied.

1.

Ahrens contends that her position in this action — discharged because of discrimination — is *not* inconsistent with her position in her first action — discharged because Chesler, Cravath, and IBM

4

(the IBM defendants) tortiously interfered with her employment with Perot Systems.

The complaint in the interference action, filed 1 December 1995, *the day of termination*, claimed:

> [T]he contact of Perot Systems ... by [the IBM defendants] constituted interference with the employment relationship. [The IBM defendants'] interference altered Perot Systems' good relationship with ... Ahrens. She became suspect and has not been provided the same status and pay she would have attained absent the interference. Because of the interference, ... Ahrens' employment has become more burdensome and difficult.

On 2 January 1996, claiming fraudulent joinder, the IBM defendants removed the action to federal court. Ahrens submitted a sworn declaration late that month, in support of her response to the IBM defendants' motion to dismiss. The declaration, which employed language almost identical to that in her complaint, quoted above, stated:

> The contact of Perot Systems, by [the IBM defendants] constituted interference with my employment relationship. [The IBM defendants'] interference altered Perot Systems' good relationship with me. I became suspect and was not provided the same status and pay I would have attained absent the interference. Because of the interference, my employment with Perot Systems became more burdensome and difficult, and I was ultimately terminated.

Early that February, Ahrens moved to remand her interference action to state court. In support, she submitted a sworn declaration, in which she adopted and incorporated by reference her statements in the above-quoted January declaration, and stated that "[t]he IBM defendants disparaged [me] to Perot Systems and

5

requested that Perot Systems terminate [me]".  The district court granted the remand motion.

In state court in late August 1996, following remand, Ahrens filed a sworn application for an injunction, seeking to prohibit defendants from interfering with her employment, and a supporting affidavit, in which she stated that "Perot Systems terminated [her] employment as *a direct result of the interference by the IBM Defendants*...."  (Emphasis added.)  This "direct result" claim was made less than two months after her gender discrimination claim was filed in federal court.

In her deposition in the interference action in late October 1996, *approximately three months after* she filed her original complaint in this action, claiming gender discrimination, and *just weeks before* she amended it to add a claim for perceived disability discrimination, Ahrens testified as follows:

> Q.   Well, why were you terminated from Perot Systems?
>
> A.   *I was terminated because ... Chesler tort[i]ously interfered with my employment contract.*

(Emphasis added.)

On 19 November 1996, *four days after* she filed her amended complaint in this action, claiming gender and perceived disability discrimination, Ahrens filed a "Response to Special Appearance" in the state court interference action, in which she stated:

> The contact of Perot Systems, by [the IBM defendants] constituted interference with my employment relationship.  [The IBM defendants'] interference altered Perot Systems' good relationship with me.  [I] became suspect

6

and was not provided the same status and pay [I] would have attained absent the interference. Because of the interference, my employment with Perot Systems became more burdensome and difficult, and I was ultimately terminated. [The IBM defendants] knew about [my] employment relationship and intended to induce a breach or termination of the relationship proximately causing damages to [me].

In contrast, in her deposition on 18 July 1998 in this action, Ahrens testified that she was discharged because of her gender and perceived disability:

> Q .... Why were you terminated from Perot Systems?
>
> A I was terminated from Perot Systems because of my sex: Female; that women weren't given the opportunity to be successful at Perot Systems that men would be; and that – because of the fact that I was considered damaged goods or handicapped and unable to provide value to the company.

In opposing Perot Systems' summary judgment motion on her discrimination claims, and in order to provide evidence of discriminatory animus, Ahrens relied on statements by Perot Systems' employees dating as early as 1993, *approximately two years before she was discharged in December 1995 and filed the tortious interference action*. But, as noted, in that interference action, she maintained that her employment relationship with Perot Systems *had been good until January 1995*, when the IBM defendants tortiously interfered with it through Chesler contacting Perot Systems.

Ahrens maintains that there is *no* inconsistency in her positions in the two actions because she has never claimed, or been

7

required to prove, that her discharge was caused *solely* either by tortious interference or by discrimination. She asserts that her statements in the first action (discharged because of tortious interference) were *not* admissions that there were no other causes for discharge; and that, even if tortious interference was part of the reason for discharge, it would *not* foreclose finding discrimination was also part of the motivation for it.

Ahrens' claim that she was *not* required to prove that either tortious interference or discrimination was the *sole* cause of discharge is supported by authority. *See ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997) (party alleging tortious interference must prove, *inter alia*, that tortious interference "proximately caused" damage); *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 253 (5th Cir. 1996) (discrimination "need not be the sole reason for the adverse employment decision, [but] must actually play a role in the employer's decision making process and have a determinative influence on the outcome"); *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996) (in ADA context, "because of" does *not* mean "solely because of"), *cert. denied*, 520 U.S. 1228 (1997).

Nevertheless, her attempt to reconcile her inconsistent positions on the basis that she was never asked for the *sole* reason for discharge is unavailing. She is *not* excused from giving incomplete, inconsistent responses to broad, open-ended, *identical* questions simply because they did *not* ask for the *sole* reason for her discharge.

In each action, she was asked: why were you terminated. For each action, she gave a glaringly inconsistent, all-encompassing, non-qualified response. For the first action, discharge was due to tortious interference; for the second, discrimination. Accordingly, the first requirement for judicial estoppel — use of inconsistent positions — is satisfied.

2.

As noted, in applying judicial estoppel, the district court held that, in granting Ahrens' motion to remand the interference action to state court, the district court had accepted, and relied on, Ahrens' position that Perot Systems terminated her employment because of tortious interference. Ahrens contends that her statements concerning discharge because of such interference (which were inconsistent with her later discriminatory-discharge statements) were neither accepted, nor relied on, by the district court in deciding to remand her first action. She maintains that, in determining that the Texas resident defendants had *not* been fraudulently joined and that remand was appropriate, the district court accepted as true, to permit joinder, only her statements that the claims against defendants were sufficiently related and arose out of the same series of transactions, but *not* her statements regarding the cause of discharge.

We disagree. Ahrens named six defendants in her interference action: Image Sciences, Inc. (ISI), Andereck, and Morton (collectively, the ISI defendants), and the three IBM defendants. The ISI defendants were Texas residents. Ahrens presented breach

9

of contract claims against all three ISI defendants; and invasion of privacy, intentional infliction of emotional distress, fraud, negligent misrepresentation, rescission, and breach of fiduciary duty claims against ISI and Andereck. Only the IBM defendants were charged with tortious interference.

The IBM defendants, Texas non-residents, removed the action to federal court on the basis that Ahrens' claims against the ISI defendants arose out of facts unrelated to, and separate from, her claims against the IBM defendants; and that Ahrens had joined the ISI defendants in order to prevent removal. In support of her remand motion, Ahrens asserted that her claims against the ISI defendants and the IBM defendants arose out of the same series of transactions, and were sufficiently related to permit joinder. She explained that ISI, her former employer, facilitated the IBM defendants' tortious interference by providing confidential and disparaging information to them for their use against her; and that both ISI and the IBM defendants sought to intimidate her and discredit her testimony as a witness in an action against ISI and IBM. In her sworn declaration in support of her remand motion, Ahrens stated that, in an effort to discredit and pressure her regarding her testimony in that action, the IBM defendants disparaged her to Perot Systems and requested her termination.

In remanding the action to state court, the district court, construing the contested issues of law and fact in favor of Ahrens, concluded that defendants had *not* met their burden of demonstrating that the ISI defendants were fraudulently joined. The remand order

10

quotes Ahrens' remand motion, including her assertion that, by providing confidential and disparaging information to the IBM defendants for use against her, the ISI defendants facilitated the IBM defendants' tortious interference with her employment at Perot Systems. Thus, in concluding that Ahrens' claims against the six defendants were sufficiently related to permit joinder (and, thereby, compel remand), the court *necessarily accepted, and relied on,* Ahrens' statements that, by providing disparaging and confidential information that the IBM defendants used to cause Perot Systems to discharge her, the ISI defendants had facilitated the IBM defendants' tortious interference with her employment with Perot Systems.

Accordingly, the second requirement for judicial estoppel — judicial acceptance of, and reliance on, Ahrens' previous inconsistent position — is satisfied.

### B.

Ahrens contends, *for the first time on appeal,* that application of judicial estoppel would violate public policy, because she did *not* intentionally mislead either court. She maintains that, because her statements (opinions) concerning her belief that she was discriminatorily discharged *cannot* conclusively establish discriminatory intent on the part of Perot Systems, and were *not* presented by her as evidence in opposition to summary judgment, those statements should *not* be used to preclude her discrimination claims.

11

Because Ahrens did *not* present this contention in district court, she *cannot* prevail on it here, unless she succeeds under our quite restricted review for plain error:  establishes a clear or obvious error that affected her substantial rights, and *also* persuades us to exercise our discretion to correct it.  *See* ***Highlands Ins. Co. v. National Union Fire Ins. Co.***, 27 F.3d 1027, 1032 (5th Cir. 1994), *cert. denied*, 513 U.S. 1112 (1995).

Contrary to Ahrens' assertion, she *did*, in opposing summary judgment, rely on her statements (opinions) regarding the cause of her discharge.  Her response to the motion includes her deposition testimony that Perot Systems discriminated against her because she is a woman and was perceived as disabled.

In any event, Ahrens has *not* cited any authority for the proposition that, in discrimination actions, public policy exempts plaintiffs from application of judicial estoppel to preclude their reliance on inconsistent positions regarding the cause of adverse employment decisions.  Ahrens has *not* shown plain error.

### III.

For the foregoing reasons, the judgment is

***AFFIRMED.***

12