In the Matter of an Arbitration Between

KARAHA BODAS COMPANY, L.L.C., Petitioner,

v.

PERUSAHAAN PERTAMBANGAN MINYAK DAN GAS BUMI NEGARA, Respondent.

No. CIV.A.H 01–0634.

United States District Court, S.D. Texas, Houston Division.

April 17, 2003.

E. Thomas Bayko, Jones Day, Houston, TX, Kenneth S. Marks, Susman Godfrey LLP, Houston, TX, Christopher F. Dugan, Paul Hastings, Washington, DC, for Karaha Bodas Co., LLC.

Michael Lamar Brem, Baker Botts LLP, Houston, TX, Matthew D. Slater, Cleary

Gottlieb, Washington, DC, F. Walter Conrad, Jr., Baker Botts, Houston, TX, Jonathan D. Schiller, William A. Isaacson, Boies & Schiller, Washington, DC, for Perusahaan Pertambangan Minyak Dan Gas Bumi Negara.

Eric Scott Lipper, Jirsch & Westheimer, Houston, TX, for Bank of America.

Patrick Carlton Appel, Adams & Reese LLP, Houston, TX, Douglas G. Boven, Crosby Heafey, San Francisco, CA, for American Overseas Petroleum, Ltd., PT Caltex Pacific Indonesia.

Jesse Ricker Pierce, Clements O'Neill, Houston, TX, Eric Grannon, Carolyn B. Lamm, Frank Panopoulos, White & Case, LLP, Washington, DC, for Ministry of Finance of Republic of Indonesia.

Roxanne Armstrong, Apache Corp., Houston, TX, for Apache Corp.

Carleton A. Davis, Hilgers & Watkins, Austin, TX, for OpicOil Houston, Inc.

### MEMORANDUM AND ORDER

ATLAS, District Judge.

This matter is before the Court on Perusahaan Pertambangan Minyak Dan Gas Bumi Negara's ("Pertamina's") Motion to Set Aside Judgment Under Fed.R.Civ.P. 60(b) ("Rule 60(b) Motion") [Doc. # 208].[1] Pertamina asks the Court to vacate its December 4, 2001 Judgment ("Final Judgment") granting summary judgment to Karaha Bodas Company, L.L.C. ("KBC") and confirming the award of an international arbitration tribunal of more than $260 million to KBC ("Arbitral Award"). Pertamina filed its current motion pursuant to Federal Rule of Civil Procedure 60(b) almost a year after filing its Notice of Appeal from the Final Judgment. The Fifth Circuit has remanded the case to this Court for the limited purpose of determining the merits of the Rule 60(b) Motion. Having considered the parties' voluminous submissions, all matters of record, and applicable legal authorities, the Court **denies in part** Pertamina's Rule 60(b) Motion and retains the remaining issues presented by the Motion **under advisement.**

### I. BRIEF FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of contracts between Pertamina and KBC for the construction and operation of an electrical power plant in Indonesia (the "Project"). The parties executed two contracts, the Joint Operation Contract ("JOC") and Energy Sales Contract ("ESC"), both of which contained an arbitration clause calling for arbitration of disputes under the Arbitral Rules of the United Nations Commission on International Trade ("UNCITRAL"). After the Project was suspended by the government of Indonesia, KBC initiated arbitration proceedings, which resulted in a December 2000 Arbitral Award in favor of KBC.

Pertamina filed an action in the Swiss Supreme Court seeking to annul the Arbitral Award. Shortly thereafter, KBC filed the instant action to confirm the Arbitral Award. The Swiss court dismissed Perta-

---

1. *See* Pertamina's Memorandum in Support of its Motion to Set Aside Judgment Under Fed.R.Civ.P. 60(b) [Doc. # 209], and documentary exhibits and authorities [Doc. # 211] and expert reports [Doc. # 212] in support thereof; KBC's Memorandum in Opposition to Pertamina's Motion to Set Aside Judgment [Doc. # 220]; Pertamina's Reply Memorandum in Support of its Motion to Set Aside Judgment Under Fed.R.Civ.P. 60(b) [Doc. # 231], and expert reports [Doc. # 232] in support thereof; KBC's Sur–Reply to Pertamina's Motion to Set Aside Judgment Under Fed.R.Civ.P. 60(b) [Doc. # 239]; and Pertamina's Rebuttal Memorandum in Support of its Motion to Set Aside Judgment Under Fed.R.Civ.P. 60(b) [Doc. # 240].

mina's appeal for untimely payment of fees. This Court issued the Final Judgment in favor of KBC a few months later. Pertamina filed, on January 2, 2002, a timely Notice of Appeal from that Final Judgment. While its appeal was pending, Pertamina filed a new suit in Jakarta, Indonesia seeking to annul the Arbitral Award. KBC sought and obtained a Preliminary Injunction from this Court ordering Pertamina to refrain from prosecuting the Indonesian action. Despite the Preliminary Injunction, Pertamina's actions resulted in an August 7, 2002 ruling from the Indonesian court setting aside the Arbitral Award and enjoining KBC from enforcing the Award. In December 2002, Pertamina filed this Rule 60(b) Motion asserting, among other things, that this Court should grant it relief from the Final Judgment because the Arbitral Award on which it is based has been annulled by an Indonesian court. The Fifth Circuit issued a limited remand to this Court for a ruling on Pertamina's 60(b) Motion. Pursuant to the parties' agreed briefing schedule, this matter was fully briefed and ripe for adjudication as of March 26, 2002.

## II. *ANALYSIS*

Pertamina's 60(b) Motion has three parts: (1) a request for relief from this Court's December 4, 2001 Final Judgment under Rule 60(b)(2) based on newly discovered evidence, namely the existence of political risk insurance coverage for the investment in the Project pursuant to which KBC's investors were paid $75 million; (2) a request for relief from the December 4, 2001 Final Judgment under Rule 60(b)(5) because the Central Jakarta District Court annulled the underlying Arbitral Award on August 27, 2002; and, alternatively, (3) a request that the December 4, 2001 Final Judgment be deemed satisfied to the extent of the $75 million dollar insurance payment. This Memorandum and Order addresses only the second part of Pertamina's Rule 60(b) Motion relating to the effect of the Indonesian annulment.

Rule 60(b)(5) of the Federal Rules of Civil Procedure authorizes the Court to grant relief from its Judgment if the "judgment upon which it is based has been reversed or otherwise vacated." The Central Jakarta District Court annulled the Arbitral Award on August 27, 2002. Pertamina argues that the Jakarta annulment is valid under the Convention on the Recognition and Enforcement of Foreign Tribunal Awards ("New York Convention") because Indonesia is the court with primary jurisdiction over the Arbitral Award. Thus, Pertamina argues, this Court must vacate its Final Judgment enforcing the Arbitral Award pursuant Article V(1)(e) of the New York Convention.

The New York Convention contemplates two types of court proceedings following an arbitral award: (i) proceedings to annul or set aside the arbitral award; and (ii) proceedings seeking recognition and enforcement of the arbitral award. *See Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir.1997). Pursuant to Article V(1)(e) of the Convention, a court "may" refuse recognition and enforcement of an arbitration award if it has been set aside by a court of competent authority in "the country in which, or under the law of which" the award was made. The country in which, or under the law of which, the award was made is the court of "primary jurisdiction." Proceedings for recognition and enforcement of an arbitration award may be brought in the courts of any signatory country to the Convention. Such courts are said to have "secondary jurisdiction." Pertamina has submitted the Expert Report of Albert Jan van den Berg (March 29, 2002) (Ex. 7 to Pertamina's Opposition to KBC's Application for Turnover Order and Cross Motion for Stay

of Enforcement and Ex. O to Pertamina's Rule 60(b) Motion), the Opinion of Professor W. Michael Reisman (May 6, 2002) (Ex. 1 to Brief in Support of Pertamina's Motion for Partial Stay and Ex. L to Pertamina's Rule 60(b) Motion), and W. MICHAEL REISMAN, SYSTEMS OF CONTROL IN INTERNATIONAL ADJUDICATION AND ARBITRATION 114 (1992) (Ex. 36 to Pertamina's Rule 60(b) Motion) is support of the New York Convention's jurisdictional scheme.

This Court is a court of secondary jurisdiction. That status constrained the Court on summary judgment to consider only the seven defenses to enforcement of the Arbitral Award specifically set forth in Article VI of the Convention, whereas a court of primary jurisdiction is not so limited. *See Yusuf,* 126 F.3d at 21 (a motion to set aside an international arbitral award is controlled by the domestic law of the rendering state).

The general enforcement scheme of the New York Convention is not a matter of dispute. The issue presented by Pertamina's Rule 60(b) motion is whether, under that scheme, Indonesia has primary jurisdiction over the Arbitral Award. In its April 26, 2002 Preliminary Injunction, this Court concluded that the arbitration was conducted under the arbitral law of Switzerland, and thus Swiss courts have primary jurisdiction over the award. The Court stands by that decision, as explained hereafter. Because the Swiss Supreme Court rejected Pertamina's appeal, albeit on procedural grounds, Pertamina does not have a cognizable defense to the enforcement of the Arbitral Award under Article V(1)(e) of the New York Convention.

Pertamina now insists, contrary to its earlier actions and assertions, that the parties' contracts—the JOC and ESC—designate Indonesian arbitral law to govern the arbitration. Pertamina relies on the following contractual provisions for its position:

> The parties expressly agree to waive the applicability of (a) Article 650.2 of the Indonesian Code of Civil Procedure so that the appointment of the arbitrators shall not terminate as of the sixth (6th) Month after the date(s) of their appointments and (b) the second sentence of Article 620.1 of the Indonesian Code of Civil Procedure so that the arbitration need not be completed within the specific time.

JOC, Ex. 1, Article 13.2(a); ESC, Ex. 2, § 8.2(a).

> In accordance with Section 631 of the Indonesian Code of Civil Procedure, the Parties agree that the Tribunal need not be bound by strict rules of law where they consider the application thereof to particular matters to be inconsistent with the spirit of this Contract and the underlying intent of the Parties, and as to such matters their conclusion shall reflect their judgment of the correct interpretation of all relevant terms hereof and the correct and just enforcement of this Contract in accordance with such terms.

JOC, Ex. 1, Article 13.2(b); ESC, Ex. 2, § 8.2(b).

> The parties hereby renounce their right to appeal from the decision of the arbitral panel and agree that in accordance with Section 641 of the Indonesian Code of Civil Procedure neither Party shall appeal to any court ... and accordingly the Parties hereby waive the applicability of Articles 15 and 108 of the Law No. 1 of 1950 and any other provision of Indonesian law and regulations that would otherwise give the right to appeal the decisions of the arbitral panel.

JOC, Ex. 1, Article 13.2(d); ESC, Ex. 2, § 8.2(d).

Pertamina's Indonesian law expert testifies that these provisions reference then applicable Indonesian law. "Declaration of Prof. Mr. Dr. Sudargo Gautama"[2] (March 25, 2002) (Ex. 5 to Pertamina's Turnover Opposition and Ex. F to Pertamina's Rule 60(b) Motion). This assertion is not disputed. Moreover, it is uncontested that Indonesian law is the substantive law governing the contracts.[3] Pertamina diverges from this Court's prior ruling by arguing that the above-quoted clauses indicate the intent of the parties to adopt Indonesian law as the procedural law governing the arbitration as well. Pertamina asserts that this Court has "eschewed" an analysis of the contracts and urges the Court to adopt Pertamina's positions. Contrary to Pertamina's contentions, the Court previously has scrutinized—and again now parses—the JOC and ESC terms. The Court finds Pertamina's position on the meaning of these contracts entirely unpersuasive.

█ It is the general rule that the procedural law of the place of arbitration governs an arbitration. As Pertamina's expert Albert Jan van den Berg has written, "the arbitration law of the country where the arbitration takes place governs the arbitration. The place of arbitration in this sense is determined by the parties in their arbitration agreement." Albert Jan van den Berg, *When is an Arbitral Award Nondomestic Under the New York Convention of 1958*, 6 PACE L. REV. 25, 44–45 (1985). Thus, by choosing to arbitrate in Geneva, Switzerland, and not including

an express provision stating that Indonesian law governs the arbitration, the parties expressed their intent that the arbitration would be governed by Swiss law. *See also Karaha Bodas Co. v. Pertamina*, No. 28 OF 2002, In the High Court of the Hong Kong Special Administrative Region Court of First Instance (J. Burrell, Mar. 27, 2003) [Doc. # 242], at 14 ("I find it irresistible that the choice of Geneva as the 'place' was also a choice that it was the formal 'seat' in the legal sense. By the same token it is plain that the choice of an independent neutral seat of arbitration carried with it an intention to be bound by the *lex arbitri* of that place.").

Pertamina also cites H.G. GHARAVI, THE INTERNATIONAL EFFECTIVENESS OF THE ANNULMENT OF AN ARBITRAL AWARD 20 (2002) (Ex. 40 to Pertamina's 60(b) Motion), for the proposition that a provision calling for arbitration in one country under the arbitration law of another country "often occurs in international transactions, particularly in State contracts to which one of the contracting parties is a State or related entity." However, other authorities submitted by Pertamina call such agreements "unusual," "exceptional," or a "dead letter." *See* Declaration of Prof. Mr. Dr. Sudargo Gautama, ¶ 14 (Ex. F to Pertamina's Rule 60(b) Motion); Expert Report of Albert Jan van den Berg, ¶¶ 9, 20 (Ex. O to Pertamina's Rule 60(b) Motion); *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 21 n. 3 (2d Cir.1997). In any event, the issue is purely academic

---

**2.** Gautama and his firm are counsel to Pertamina in the Indonesian action against KBC.

**3.** To the extent Pertamina submits Gautama's Declaration as expert opinion that Indonesian law does not permit waiver of the right to seek an annulment of an arbitration proceeding, the opinion is unsupported by authority and fails the requirements for admissibility of expert opinion established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579,

589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *See Tanner v. Westbrook*, 174 F.3d 542, 548 (5th Cir.1999). Among other things, the testimony must be reliable and relevant. *Pipitone v. Biomatrix*, 288 F.3d 239, 243–45 (5th Cir. 2002); *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 580–81 (5th Cir.2001); *Tanner*, 174 F.3d at 546. Gautama provides no legal or other basis for his bold assertion.

because the contracts at issue here contain no provision calling for arbitration under the arbitration law of another country different from the country where the arbitration was held.

The Court agrees with Pertamina's contention that the parties have contractual autonomy to chose the applicable arbitral law. *See* ALBERT JAN VAN DEN BERG, THE NEW YORK ARBITRATION CONVENTION OF 1958: TOWARD A UNIFORM INTERPRETATION 267 (1981) (Ex. 41 to Pertamina's 60(b) Motion). "The first rule is the primary rule of party autonomy according to which the parties have the liberty to subject the arbitration agreement to the law of their choice. The second rule is the subsidiary rule of territoriality according to which the arbitration agreement is, *failing a choice of law by the parties,* governed by the law of the country where the award was made." *Id.* at 291 (emphasis added). Pertamina deduces from this innocuous general statement the unwarranted conclusion that the parties here chose Switzerland as the place of arbitration, but designated Indonesian procedural and substantive law to apply.

Article 13.2(d) of the JOC and § 8.2(d) of the ESC relate to post-award procedures, namely, a waiver of right to appeal an award to any court, not the conduct of the arbitration. The other two provisions cited by Pertamina refer to Indonesian arbitration law: one clause expressly *excludes* application of a provision of Indonesian law (JOC Article 13.2(a) and ESC § 8.2(a)), and one expressly *includes* application of a provision of Indonesian law (JOC, Article 13.2(b) and ESC, Ex. 2,

§ 8.2(b)). These provisions demonstrate that the parties intended to assume control over certain arbitration procedures as a matter of contract, whether or not those procedures would otherwise be applicable as a matter of law. The presence of those provisions in the contract is not evidence of the parties' choice of Indonesian arbitral law as a whole to govern the arbitration. Rather, these provisions demonstrate merely that the parties sought to avoid speculation or later argument about the effect of those provisions. Given the extensive detail of the parties' contracts, and the enormity of the Project-related finances, the parties—had they in fact desired—could have included a provision specifically incorporating Indonesian arbitral law despite the arbitration situs in Switzerland. Had they done so, they would have altered the standard territorial rule on applicable arbitral law. The parties did not do so. Pertamina's *post hoc* and forced construction of the contracts to serve its current purposes is not supported by the contractual language to which the parties are bound.

 Pertamina insists, on the one hand, that the intent of the parties must be gleaned only "from the contractual language on which they agreed at the time of contracting." Pertamina's Reply, at 34. The Court agrees that this principle of contract law applies. Nevertheless, Pertamina provides the Affidavit of G.A.S. Nayoan, the Exploration and Production Director of Pertamina, who was the principal negotiator of the contracts for Pertamina (Ex. 76 to Pertamina's Rule 60(b) Motion) as evidence of the parties' intent.[4]

---

4. Gautama's opinion that "the parties intended to invoke the non-excluded provisions of Indonesian law as the governing law of their arbitral proceedings" (Ex. F to Pertamina's Rule 60(b) Motion, ¶ 13), as well as van den Berg's opinion that "it was the parties' clear

intention to choose Indonesian arbitration law" (Supplemental van den Berg Opinion, Ex. P to Pertamina's Rule 60(b) Motion), are inadmissible. They are not proper expert opinions; these opinions do not represent conclusions based on technical or specialized

Under basic contract construction principles, endorsed by Pertamina as indicated, Nayoan's Affidavit constitutes parol evidence that is inadmissible to vary the unambiguous terms of the contracts. *See, e.g., Norfolk Shipbuilding & Drydock v. Seabulk,* 274 F.3d 249, 254 (5th Cir.2001); *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.,* 933 F.2d 314, 320 (5th Cir. 1991). Moreover, Nayoan's self-serving Affidavit is insufficient to create a genuine issue of material fact as to the meaning of the contracts in light of Pertamina's many written, post-dispute submissions and conduct evidencing a contrary intent.

■ Pertamina argues that its statements and actions in litigation are immaterial and that no judicial estoppel arises from them. The Court already has found that the parties' contracts, as written, demonstrate that the parties contracted for the application of Swiss arbitral law. The post-contract factual record concerning Pertamina's conduct corroborates the Court's findings made above regarding Pertamina's intent at the time of contracting with KBC. The Tribunal issued the Arbitral Award in favor of KBC in December 2000. On February 1, 2001, Pertamina filed a proceeding to nullify the Award in the Swiss Supreme Court. This act of seeking nullification from the Swiss courts, not the Indonesian court, demonstrates as a factual matter that Pertamina intended Swiss arbitral law to apply and believed that the parties had agreed to Swiss arbitral law under their contracts. Pertamina reinforced its view in this regard through its repeated efforts to resuscitate the Swiss proceeding after the April 24, 2001 dismissal by the Swiss Supreme Court for failure to timely pay filing costs.

Meanwhile, on February 22, 2001, KBC filed this action seeking confirmation of the Arbitral Award. Pertamina participated fully in this case. After the Swiss court issued its final ruling in August 2001,[5] this Court issued, on December 4, 2001, its decision granting KBC's motion for summary judgment confirming the Arbitral Award and the Final Judgment in favor of KBC. Pertamina appealed the Final Judgment, but did not file a supersedeas bond to stay execution on the judgment. Belatedly, on March 14, 2002, approximately *fifteen months* after entry of issuance of the Arbitral Award, *eight months* after the Swiss court's dismissal of its appeal, and *over three months* after entry of Final Judgment in this case, Pertamina filed an annulment action in Jakarta, Indonesia, challenging the Arbitral Award and seeking an injunction and penalties against KBC's enforcement of that Award.

Pertamina attempts to explain its failure to initially and timely seek relief from the Indonesian court. Pertamina states that under Indonesian law the action could not be filed until after the Arbitral Award was registered in Indonesia, which required several procedural steps and did not take place until March 8, 2002. However, Pertamina never asserts when it began the steps to register the Award in Indonesia. Pertamina does not, in its many detailed and extensive submissions, provide any proof that it began this process promptly after the Award was issued in December 2000. Pertamina also fails to explain why

knowledge. They are, instead, parol evidence offered on factual matters. These opinions invade the Court's province to interpret the parties' contracts as a matter of law. Moreover, these witnesses have no personal knowledge of the contract negotiations, even if such matters were admissible.

5. On August 7, 2001, the Swiss Supreme Court declined to reconsider its decision and the dismissal became final.

it took such an extended period of time to register the Arbitral Award. Pertamina merely makes the unpersuasive, vague assertion that it commenced annulment proceedings in Indonesia "as early as was practicable" and that it "was able to cause the Award to be registered" as soon as it fulfilled the necessary procedural requirements.[6] This limited recitation stands in stark contrast to the fact that Pertamina promptly filed a proceeding challenging the Arbitral Award in Switzerland and argued strenuously for delays of proceedings before this Court pending the outcome of the Swiss proceeding. Pertamina never sought from this Court any delay pending an Indonesian action. This conduct is inconsistent with and belies Pertamina's current posture that KBC and Pertamina intended at the time of contracting that Indonesian courts have primary jurisdiction to annul the Arbitral Award.

Moreover, Pertamina's original interpretation of its contracts with KBC was in evidence when Pertamina repeatedly represented to the Tribunal that Swiss arbitral law applied to the arbitration. In its January 10, 1999 "Memorial Regarding Preliminary Issues" submitted to the Tribunal, Pertamina stated "Reference to Swiss Law supports this conclusion. As a result, arbitration proceedings under both contracts are governed by Chapter 12 of the Swiss Private International Law Statute."[7] The Tribunal relied on Pertamina's urging of Swiss arbitral law in making the Award. *See, e.g.,* Preliminary Award in an Arbitration Procedure Under the UNCI-

TRAL Arbitration Rules, September 30, 1999, § B(1) ("The Respondents support this conclusion by making reference to Swiss law as the JOC and the ESC provide for UNCITRAL Arbitration in Geneva between the parties which are neither Swiss nor Swiss resident. As a result, and under both contracts, the arbitration proceedings are governed by Chapter 12 of the Swiss Private International Law Statutes. Under Swiss law, [Respondent contends] the Arbitral Tribunal is lacking jurisdiction because KBC failed to comply with the contractual prerequisites to arbitration."); *id.* § C(1) ("The Respondents also state that, under the arbitration agreements and Swiss law, the arbitrators have no power to consolidate ..."); *id.* § C(3) (citing the "famous Westland Case" of the Swiss Federal Tribunal in support of its decision that a consolidated arbitration was appropriate); *id.* § D(1) (Respondents contend "such solution is not acceptable under the applicable Swiss law").

In asking this Court to stay this action pending its appeal to the Swiss Supreme Court, Pertamina reiterated its belief that the parties had agreed to Swiss arbitral law. Pertamina stated: "The arbitration award ... was conducted subject to the arbitration laws of Switzerland, and the Swiss court is empowered to vacate an award rendered in Switzerland ... KBC is asking this Court to act prematurely to confirm an award that might be overturned in the country whose law governed the arbitration."[8] These representations

---

**6.** Pertamina's Memorandum in Support of Rule 60(b) Motion, at 10.

**7.** Ex. 23 to KBC's Motion for Summary Judgment, at 27. *See also id.* at 28 ("Indeed, the Swiss Courts have required that parties strictly adhere to the precise terms of their arbitration agreement"); *id.* at 33 ("The arbitrators do not, under the arbitration agreements and the Swiss law in force at the seat of arbitra-

tion, have the power ..."); *id.* at 38 ("It would be subject to setting aside in Switzerland under Articles 179 and 190 of the Swiss PIL").

**8.** Respondent Pertamina's Motion for Stay Pending Resolution of Swiss Appeal and Memorandum in Support [Doc. # 13], at 1. *See also id.* at 6 ("it is fundamental that the courts of the originating nation are in the best

are strong circumstantial evidence that Pertamina intended, at least until March 2002, Swiss arbitral law to apply. These representations also are strong acknowledgments by Pertamina that in fact the governing arbitral law was that of Switzerland.[9]

Pertamina further disputes KBC's contention that Swiss law forbids the application of another country's arbitral law to an arbitration conducted in Switzerland. *See* Opinion of George Friedli, Esq. (June 27, 2002) (Ex. 4 to Pertamina's Partial Stay Reply and Ex. E. to Pertamina's 60(b) Motion); Supplemental Opinion of Professor W. Michael Reisman (June 27, 2002) (Ex. 5 to Pertamina's Partial Stay Reply and Ex. M. to Pertamina's 60(b) Motion). The Court need not make a definitive rul-

---

position to pass on issues under their own law ... Here, Pertamina's appeal encompasses questions of Swiss law"); Respondent Pertamina's Memorandum in Opposition to KBC's Motion for Summary Judgment [Doc. # 29], at 34–35 ("By adopting an arbitral procedure that resulted in such a disparate outcome, the tribunal thus exceeded its authority and failed to accord the parties equal treatment in direct contravention of the procedural law governing this arbitration. *See* RLA 1, Swiss Private International Law Statute ('PIL'), Article 182(3) ('the arbitral tribunal shall ensure equal treatment of the parties and the right of the parties to be heard in an adversarial procedure'); UNCITRAL Arbitration Rules, LA–6, Article 15 (requiring that parties 'are to be treated with equality and that at any stage of the proceedings each party is given a full opportunity of presenting its case.'). Neither the UNCITRAL Arbitration Rules nor the Swiss Private International Law Statute provide for non-consensual consolidation of arbitration disputes."); Pertamina's Answer to Petition [Doc. # 8], at 9 ("the applicable laws and treaties governing international arbitration give courts of the arbitration situs, here Switzerland, authority to vacate such awards"); Joint Discovery/Case Management Plan [Doc. # 11], at 2 ("the arbitration KBC seeks to confirm was rendered in Geneva, Switzerland, and is subject to Swiss arbitration law (and Indonesian substantive law). Pertamina has filed with the Swiss Supreme Court an appeal of the arbitration award.").

**9.** In addition, Pertamina's comments to the Court and the Tribunal support the imposition of judicial estoppel. Judicial estoppel is a matter of federal procedure governed by federal law. *Ergo Science, Inc. v. Martin,* 73 F.3d 595, 600 (5th Cir.1996). Application of judicial estoppel rests in the Court's discretion. *Ahrens v. Perot Sys. Corp.,* 205 F.3d 831, 833 (5th Cir.2000). Judicial estoppel is "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." *In re Coastal Plains, Inc.,* 179 F.3d 197, 205 (5th Cir.1999) (quoting *Brandon v. Interfirst Corp.,* 858 F.2d 266, 268 (5th Cir.1988)); *Hall v. GE Plastic Pacific PTE, Ltd.,* 327 F.3d 391, 396 (5th Cir.2003); *Ahrens,* 205 F.3d at 833. Most courts have identified two limitations on the application of judicial estoppel: (1) the position of the party to be estopped must be clearly inconsistent with a prior position, and (2) the court must have accepted the prior position. *Coastal Plains,* 179 F.3d at 206; *Ahrens,* 205 F.3d at 833. Judicial acceptance means only that the court has adopted the position urged by a party, *either as a preliminary matter* or part of a final disposition. *Coastal Plains,* 179 F.3d at 206 (emphasis added). This Court explained in its Preliminary Injunction that it relied on Pertamina's assertion that the Swiss court was the court with authority to annul the Arbitral Award in waiting until that court had ruled before considering KBC's summary judgment motion. Specifically, the Court set the briefing schedule in this case to allow time for the Swiss court to rule. The Tribunal also relied on Pertamina's prior position. *See supra* at 13–14. It is widely held that a position taken in an arbitration can give rise to judicial estoppel. *See Speroni S.P.A. v. Perceptron, Inc.,* No. 98–2192, 12 Fed.Appx. 355, 358 n. 1 (6th Cir. June 13, 2001), and cases cited therein; *cf. Universal American Barge Corp. v. J–Chem, Inc.,* 946 F.2d 1131, 1137 (5th Cir.1991) (an arbitration decision can have collateral estoppel or *res judicata* effect between the same parties in a subsequent proceeding). Thus, judicial estoppel does apply in this case to preclude Pertamina's current argument that Indonesia, not Swiss arbitral law applies. Pertamina's conduct reinforces this conclusion.

ing on this aspect of Swiss law because the Court rejects Pertamina's assertion that the parties' contracts designate the application of Indonesian arbitral law.[10]

 Pertamina next argues that the circumstances surrounding the negotiations of the parties' contracts evidences the parties' intent to incorporate Indonesian arbitral law. Specifically, Pertamina points to the agreements in the *Himpurna* and *Patuha* cases, in which the parties provided for arbitration in Indonesia. In those cases, the parties included the same provisions as in the JOC and ESC cited above regarding waiver or incorporation of Indonesian law. Pertamina contends that these similarities mean that the parties intended to adopt Indonesian arbitral law. Pertamina's argument falls of its own weight. What the *Himpurna* and *Patuha* cases show, if anything, is that the parties knew how to make the arbitration subject to Indonesian law if they wanted to do so. Significantly, the KBC–Pertamina JOC and ESC do not contain a key provision present in the *Himpurna* and *Patuha* contracts, namely, a requirement of arbitration in Indonesia. It is the choice of Switzerland as the site of arbitration that renders Indonesian arbitral

law inapplicable, not the inclusion of the above quoted provisions in the JOC and ESC. In particular, the parties' choice of Switzerland as the arbitration site combined with the absence of an agreement by the parties to apply the law of a jurisdiction other than Switzerland to the arbitration makes Swiss arbitral law applicable. The choice of Indonesia as the site for the *Himpurna* and *Patuha* arbitration negates Pertamina's attempted reliance on those cases.

Article V(1)(e) of the New York Convention provides that a court should deny enforcement of an arbitral award that has been annulled or set aside "by a competent authority of the country in which, or under the law of which" the award was made. This means that a court of secondary jurisdiction, such as this one, is discouraged from enforcing an award that has been set aside by a court of primary jurisdiction. This general proposition is not controversial. However, this premise does not answer the issue presented. First, at the time of this Court's Final Judgment, no court had annulled or set aside the Arbitral Award. This fact alone distinguishes this case from most of the cases cited by Pertamina.[11] However, even if, as Perta-

---

**10.** Pertamina contends that a court in any state whose law is implicated by an award may make its own determination as to whether it has primary jurisdiction over an arbitral award. *See* ANDREAS BUCHER & PIERRE-YVES TSCHANZ, INTERNATIONAL ARBITRATION IN SWITZERLAND 29, 164 (1989) (Ex. 45 to Pertamina's 60(b) Motion). Pertamina's position appears contrary to the New York Convention's scheme for providing uniform rules for enforcement of international arbitration awards. Moreover, author Bucher notes that having "a double test [for determination of primary jurisdiction], *i.e.,* that of the place of arbitration and that of the law governing the arbitration, can give rise to discrepancies," for instance, "an award purporting to be made in Switzerland under German arbitration law is considered a Swiss award in Switzerland and

a German award in Germany, with the result that such an award could be challenged in both countries." *Id.* The Court is unpersuaded by Pertamina's contention that Indonesia is in the "precise position" as Germany in the foregoing example; the evidence simply does not support Pertamina's assertion that the arbitration here was made under Indonesian arbitration law. In any event, whatever effect a country's own determination of its primary jurisdiction might have within its own territorial boundaries, it does not follow that a second court, such as this one, is bound by another court's patently invalid exercise of primary jurisdiction.

**11.** *See Baker Marine (Nig.) Ltd. v. Chevron (Nig.) Ltd.,* 191 F.3d 194 (2d Cir.1999); *Spier v. Calzaturificio Tecnica, S.p.A.,* 71 F.Supp.2d

mina contends, a post-judgment annulment is grounds to vacate the enforcement decision, the defense applies only where an arbitral award has been annulled by a court of "competent jurisdiction." Because the Central Jakarta District Court is not a court of competent jurisdiction in light of the parties' contract, the other facts presented, and the New York Convention, the Indonesian court's ruling purporting to annul the Arbitral Award has no legal effect on this Court's December 4, 2001 Final Judgment confirming that Award.[12]

Pertamina additionally argues that because the Preliminary Injunction is not a final order, the Indonesian ruling should be given precedence. This argument misses the mark. Pertamina conflates the issues raised by KBC's petition to enforce the Arbitral Award with the issues presented by the Preliminary Injunction, which relate to the propriety of Pertamina seeking a second forum for annulment of the Award. In using the term "Preliminary Injunction," the Court did not hold nor intend to suggest a lack of finality on the merits of the enforcement decision, as Pertamina argues. In fact, when KBC sought an order to restrain Pertamina's participation in the Indonesian action, and when the Court issued its Preliminary Injunction and the preceding Temporary Restraining Order, this Court's Final Judgment on the merits of KBC's claims already had been entered and was on appeal at Pertamina's instance. The Court, after due consideration, rejected Pertamina's primary jurisdiction arguments in its Memorandum in support of the Preliminary Injunction issued April 26, 2002.[13] The only thing "preliminary" about these injunctions was that this Court was willing, as an accommodation to Pertamina, if requested, to consider further briefing on the propriety of the injunction. Until the Rule 60(b) Motion, Pertamina did not request such further consideration. The Court now has considered all of Pertamina's primary jurisdiction arguments *de novo* in connection with the Rule 60(b) Motion. The Court rejects Pertamina's contentions, declines to vacate its Final Judgment awarding summary judgment to KBC, and will not alter its injunction.[14] As set forth in detail above, the Court again holds that the Swiss courts have primary jurisdiction over the Arbitral Award and thus the Indonesian ruling purporting to annul the Arbitral Award is not issued by a court of competent jurisdiction. The Indonesian annulment ruling therefore is invalid and of no force and effect.

In reaching this conclusion, the Court also has considered carefully principles of

---

279 (S.D.N.Y.1999); *but cf. In re Chromalloy Aeroservices v. Arab Republic of Egypt,* 939 F.Supp. 907 (D.D.C.1996) (enforcing an arbitration award despite its annulment by an Egyptian court).

**12.** The High Court of the Hong Kong Special Administrative Region, Court of First Instance, reached the same conclusion in its March 27, 2003 decision in the enforcement action brought by KBC in that court. *See* Doc. # 242.

**13.** Although the Court recognized that Pertamina contemplated using an Indonesian annulment order as the basis for a Rule 60(b) motion, the Court anticipated that the Preliminary Injunction would forestall any Indonesian annulment order until the Court decided the propriety of Pertamina's seeking that relief at the time it did.

**14.** The Court does not base its decision on the *res judicata* effect of its Preliminary Injunction or on a finding that Pertamina's current Rule 60(b) Motion is itself a violation of the Preliminary Injunction. Therefore, it is not necessary to discuss the expert report of Geoffrey C. Hazard, Jr., Ex. T to Pertamina's Rule 60(b) Motion.

finality and comity. These principles do not militate in favor of the Indonesian annulment obtained through Pertamina's circumvention of the New York Convention and by forum shopping until a court ruled in its favor. Indeed, it is Pertamina that has failed to recognize the finality of this Court's prior judgment, which was entered after Pertamina's full participation in this action and after the Swiss Supreme Court rejected Pertamina's appeal under the arbitral law applicable to the parties' arbitration. Respect for foreign judicial systems is an important consideration in cases under the New York Convention. *See Monegasque De Reassurances S.A.M. (Monde Re) v. Nak Naftogaz*, 311 F.3d 488, 498–99 (2d Cir.2002). The interests of finality and comity are best served by enforcing this Court's Final Judgment confirming the Arbitral Award.

Pertamina's further argument that KBC has waived any objection to the jurisdiction of the Indonesian court by defending itself before that court and filing an appeal of the annulment ruling is without merit. The cases of *Hanes Supply Co., Inc. v. Valley Evaporating Co.*, 261 F.2d 29, 35 n. 7 (5th Cir.1958), and *Sprague & Rhodes Commodity Corp. v. Instituto Mexicano Del Café*, 566 F.2d 861, 863 (2d Cir.1977), cited by Pertamina, deal with a party's waiver of an objection to personal jurisdiction by appearing in an action, and have no application here.[15] Moreover, Pertamina

is not entitled to the benefit of the equitable principle of waiver. The case in Indonesia was initiated by Pertamina after it had fully litigated its positions in the Courts of the United States. Pertamina exerted only superficial effort to comply with this Court's Temporary Restraining Order and Preliminary Injunction. The Court will not penalize KBC for defending itself against Pertamina's aggressive and questionable tactics.

This Court's Preliminary Injunction ruling and its ruling today are not intended to disparage the courts of Indonesia. The Court pointedly has directed its admonishments to the conduct of Pertamina, a party subject to its jurisdiction, not to criticize Indonesian courts.[16]

### III. *CONCLUSION AND ORDER*

Because the Arbitral Award was made under the arbitral law of Switzerland, the Court rejects Pertamina's contention that the December 4, 2001 Final Judgment in this case must be vacated because of the August 7, 2002 annulment of the Arbitral Award by the Central District Court of Jakarta, Indonesia. It is therefore

**ORDERED** that Pertamina's Rule 60(b) Motion is **denied in part** to the extent it seeks relief under Rule 60(b)(5) based on the August 7, 2002 ruling of the Indonesian court. It is further

15. This is a unique case, substantively and procedurally. Pertamina's citation to the Restatement (Second) of Conflict of Law and Restatement (Third) of Foreign Relations regarding recognition of foreign judgments where the issue of personal jurisdiction has been fully litigated in the foreign jurisdiction also are inapposite. Indeed, § 482(2)(a) of the Restatement (Third) of Foreign Relations provides that "a court in the United States need not recognize a judgment of the court of a foreign state if: (a) the court that rendered the judgment did not have jurisdiction of the subject matter of that action." Likewise, Per-

tamina's reliance on cases recognizing the decision of another court's jurisdictional ruling based on full faith and credit is misplaced. The Indonesian court's, and this Court's, jurisdiction is governed by the specific provisions of the New York Convention.

16. This Court does not and has not in any way credited or relied on KBC's assertions that the Indonesian courts are not an appropriate forum because they are biased or corrupt.

**ORDERED** that all other aspects of Pertamina's Rule 60(b) Motion are **retained under advisement** and will be the subject of a future Memorandum and Order from this Court.