# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 26, 2010

Lyle W. Cayce
Clerk

No. 09-10405

RSR CORPORATION, QUEMETCO, INC.,
QUEMETCO METALS LIMITED, INC. f/k/a
MURPH METALS, INC., and QUEMETCO
REALTY, INC.,

Plaintiffs-Appellants,

v.

INTERNATIONAL INSURANCE COMPANY,

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before GARWOOD, SMITH, and CLEMENT, Circuit Judges.

GARWOOD, Circuit Judge:

From 1972 until 1983, Quemetco, Inc. (Quemetco), a subsidiary of RSR Corporation, operated a lead smelter on Harbor Island, near Seattle, Washington. During that time, Harbor Island suffered substantial environmental damage. In December 1982, the Environmental Protection Agency (EPA) announced that it planned to place Harbor Island on its National Priorities List (NPL).[1] In 1986, the EPA determined that Quemetco was a

---

[1] Placement of a site on the NPL indicates that the EPA plans to clean up a site and serves as notice to potentially responsible parties that the EPA may seek to recoup its

potentially responsible party for the pollution. On May 22, 2000, the EPA filed an action under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) seeking recovery from RSR Corporation for the costs it had expended in cleaning up Harbor Island, as well as for expected future costs.

Meanwhile, on February 2, 2000, International Insurance Company (International) sued RSR Corporation, Quemetco, Quemetco Metals Limited, Inc., and Quemetco Realty, Inc. (collectively, RSR), seeking a declaratory judgment that International had no obligations to RSR under four Environmental Impairment Liability (Environmental) policies which International's predecessor in interest had sold to RSR in 1981. An initial jury trial was held to resolve certain coverage issues, while other coverage and damages issues were reserved for future resolution. At the conclusion of this initial trial, the district court entered judgment for RSR, holding that International's Environmental policies obligated it to indemnify RSR for remediation costs incurred by the EPA at Harbor Island, to the extent those costs were not excluded by the policies. We affirmed the district court's judgment on September 19, 2005. *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 286–89 (5th Cir. 2005).

RSR and International were realigned on July 12, 2007.[2] Afterwards, International raised additional defenses which had been unavailable to it at the time of the prior judgment or which had been reserved in the initial jury trial. On October 22, 2008, both parties filed motions for summary judgment. The district court granted International's motion and dismissed RSR's claims,

remediation costs from them.

    [2]So that RSR became plaintiff and International defendant.

holding that RSR could not recover from International (1) because an "other insurance" clause in International's Environmental policies limited RSR's recovery to sums it had already received from settlement agreements with several other insurance companies and (2) alternatively, because Texas's "one recovery" rule barred RSR from collecting money from International when it had already been fully compensated for its Harbor Island liability through its settlement agreements with other insurance companies.

RSR now appeals the district court's grant of summary judgment. For the following reasons, we affirm.

## FACTS AND PROCEEDINGS BELOW

In 1981, the North River Insurance Company (North River) issued four Environmental policies to RSR, which provided successive layers of coverage up to $60 million, with a per claim limit of $30 million, subject to certain terms and conditions. The policies provided coverage for multiple locations, including RSR's facilities on Harbor Island. In 1993, International succeeded the interests of North River in these policies.

Under the Environmental policies, North River agreed to:

"[I]ndemnify the Insured against all sums which the Insured shall be obligated to pay for compensatory but not punitive or exemplary damages by reason of the liability imposed upon the Insured by law on account of: –

(a)    Personal Injury, including death at any time resulting therefrom;

(b)    Property Damage;

(c)    Impairment or diminution of or other interference with any other environmental right or amenity protected by law;

. . . caused by Environmental Impairment in connection with the

3

Business of the Insured . . . and in respect of which a claim has been made against or other due notice has been received by the Insured during the Policy Period."

The policies defined "Environmental Impairment" as:

"(a)     the emission, discharge, dispersal, disposal, seepage, release or escape of any liquid, solid, gaseous or thermal irritant, contaminant or pollutant into or upon land, the atmosphere or any watercourse or body of water;

(b)     the generation of smell, noises, vibrations, light, electricity, radiation, changes in temperature or any other sensory phenomena but not fire or explosion

arising out of or in the course of the Insured's operations, installations or premises . . . ."

However, Condition 8 of each policy provided that:

"This Policy shall not be called upon in contribution and no liability shall attach hereunder for any injury, loss, damage, costs or expenses recoverable under any other insurance insuring to the benefit of the Insured except as regards any excess over and above the amounts collectible under such other insurance; provided always that this clause shall not apply to any policy that is specifically arranged by the Insured to cover limits in excess of those stated in this Policy."

Additionally, each Environmental policy excluded coverage for liability resulting from a "sudden and accidental happening" or a "fire or explosion."

RSR also purchased Comprehensive General Liability (CGL) insurance policies from many other insurance companies that covered multiple sites, including the Harbor Island site. Some of those CGL policies contained exclusions for environmental claims, with exceptions to the exclusions for "sudden and accidental" events. Other CGL policies excluded environmental claims, but had exceptions to those exclusions for hostile fires. And other CGL policies did not exclude environmental claims, but only covered accidents and

occurrences.

In 1993, RSR sued fifty-three of its CGL insurance providers in the 71st District Court for the Judicial District of Harrison County, Texas. In that action, RSR asserted claims against the CGL insurers for refusing to cover environmental cleanup costs and personal injury claims relating to more than twenty-five sites, including the Harbor Island site. In 2001, several CGL insurers made International a cross-claim defendant in the Harrison County action and sought contribution. RSR also asserted claims against International in the Harrison County action for breach of the Environmental policies, violations of the Texas Insurance Code, and recovery of attorney's fees.

In the Harrison County action, RSR asserted that the CGL insurers were obligated to reimburse it for environmental costs because the pollution had been accidental. RSR argued that accidental pollution satisfied the CGL policies' "sudden and accidental" exception to the exclusion of environmental claims. Although the CGL insurers contested this assertion by arguing that the "sudden and accidental" exception could only be triggered by pollution that was both sudden and accidental, the Harrison County court adopted RSR's reading of the policies in a letter ruling dated March 19, 2003.

Between 1993 and 2005, RSR entered into thirty-six separate settlement agreements with its CGL insurers, from which it received an aggregate payment of $76,006,501.00. It dismissed the rest of its CGL insurers from the Harrison County action. It also dismissed International. Following the execution of the last of the settlements, RSR non-suited the Harrison County action.

In the meantime, International had initiated the present action in federal court in February 2000, seeking a declaratory judgment that it had no obligations to RSR under the Environmental policies in connection with the Harbor Island site or with another site in West Dallas, Texas. In August 2001,

RSR and International tried certain coverage issues relating to the Harbor Island claim before a jury, while reserving unripe coverage and damages issues for future resolution. Issues relating to the West Dallas site were severed into a separate trial and were later settled.[3] After the jury returned its verdict on the Harbor Island issues, the district court entered judgment for RSR, declaring that International was:

> "contractually obligated to indemnify RSR for any remediation costs and expenses that RSR is or becomes obligated to pay to the United States Environmental Protection Agency ("EPA") with respect to the EPA's remediation activity at the Harbor Island site . . . to the extent such remediation costs and expenses are covered by [the] EIL Policies . . . and are not otherwise excluded by the terms of the policies . . . ."

The district court also determined that the EPA had made a claim against RSR, that RSR had not waived its right to coverage with respect to the Harbor Island site, that RSR's Harbor Island lawsuit against International was not barred by the statute of limitations, and that RSR should take nothing on its common law bad faith and Texas Insurance Code claims against International. We affirmed this judgment on September 19, 2005. *Int'l Ins. Co.*, 426 F.3d at 286–89.

In March 2006, RSR moved to reopen the same federal district court case under 28 U.S.C. § 2202. Subsequently, International requested leave to amend its complaint to assert new coverage and damages defenses which had not been ripe at the time of the 2001 trial. In February 2007, the district court granted both motions. International then amended its complaint to assert new defenses, among them that Condition 8 of its policies, an "other insurance" clause, precluded coverage of RSR's Harbor Island claims because RSR had already been

---

[3] The Harbor Island and West Dallas sites are the only sites on which RSR has made unsatisfied claims on International on the Environmental policies.

fully compensated for this liability through its settlements with the CGL insurers in the Harrison County state court case. International also asserted that, even if the "other insurance" clause did not encompass the CGL policies, no recovery could be had on the Harbor Island claims, due to the Texas common law "one satisfaction" rule, because the CGL settlements had fully compensated RSR for its losses.

On July 12, 2007, the parties were realigned. RSR filed its original complaint on March 7, 2008, seeking approximately $13.1 million as its allegedly remaining liabilities on the Harbor Island claims, and International filed its answer on April 3, 2008. On October 22, 2008, RSR and International filed motions for summary judgment. The district court held that the terms of Condition 8 of the Environmental policies prevented RSR from recovering from International, because it had already recovered fully for the cleanup costs of the Harbor Island site from its settlements with its CGL insurers. Alternatively, the district court found that the Texas common law "one satisfaction" rule also barred recovery, due to the fact that RSR had been fully compensated for its liabilities at the Harbor Island site. Accordingly, the district court granted International's motion for summary judgment on March 23, 2009, and entered a take-nothing judgment in its favor. RSR timely filed its notice of appeal.

## DISCUSSION

RSR argues that the district court erred by granting summary judgment to International (1) because, as a matter of law, the "other insurance" clause in International's policy cannot properly be read to bar recovery based on the settlements with the CGL insurers, and (2) because the common law "one satisfaction" rule is inapplicable outside of tort cases in Texas. We need not address the applicability of the "one satisfaction" rule to an insurance contract, because we agree with the district court that International's "other insurance"

7

clause deprived RSR of any right to recover more than it had already obtained from its settlements with the CGL insurers.

## I. Standard of Review

We review a district court's grant of summary judgment de novo. *Goodman v. Harris County*, 571 F.3d 388, 393 (5th Cir. 2009), *cert. denied*, 130 S.Ct. 1143, 130 S.Ct. 1146 (2010). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "[T]here is no material fact issue unless 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party'." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) (quoting *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2510 (1986)).

We must view all evidence and reasonable inferences therefrom in the light most favorable to the party opposing the motion. *Scott v. Harris*, 127 S.Ct. 1769, 1774–75 (2007). However, conclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment. *Douglass*, 79 F.3d at 1429. The court has no duty to search the record for material fact issues. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim. *Id.*

Our jurisdiction in this case is based on the diversity of the parties. International's insurance policies are governed by Texas law. *Int'l Ins. Co.*, 426 F.3d at 291. Therefore, we must apply the substantive insurance law of Texas to interpret the Environmental policies. *Id.* In doing so, we are bound by the

decisions of the Supreme Court of Texas. *See United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 565–66 (5th Cir. 2005). While the decisions of the intermediate Texas courts of appeals provide guidance, they do not necessarily bind us. *Id.* If the Supreme Court of Texas has not ruled on an issue before us, we must determine, to the best of our ability, what it would decide under the same circumstances. *Id.*

Texas courts interpret insurance policies according to the rules of contractual construction. *Int'l Ins. Co.*, 426 F.3d at 291 (citing *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998)). Texas courts give contractual terms "their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). Unambiguous contracts are enforced as written. *Id.* Whether or not a contract is ambiguous is a question of law for the court. *Id.*

## II. "Other Insurance"

Where a liability covered by the Environmental policies is also covered by "other insurance," Condition 8[4] prevents recovery unless the other insurance has been exhausted, in which case the Environmental policies can serve as excess insurance. Condition 8 is triggered where "any injury, loss, damage, costs or expenses [are] recoverable under any other insurance insuring to the benefit of

---

[4] The entire text of Condition 8 is:

"This Policy shall not be called upon in contribution and no liability shall attach hereunder for any injury, loss, damage, costs or expenses recoverable under any other insurance insuring to the benefit of the Insured except as regards any excess over and above the amounts collectible under such other insurance; provided always that this clause shall not apply to any policy that is specifically arranged by the Insured to cover limits in excess of those stated in this Policy. Nothing herein shall be construed to make this Policy subject to the terms, conditions and limitations of any other insurance."

the Insured." Thus, for Condition 8 to have been applicable in this case, (1) RSR must have had "other insurance" insuring to its benefit, and (2) RSR must have been able to recover under this other insurance for the same "injury, loss, damage, costs or expenses" it sought to recover from International.

The district court held that RSR's CGL policies were "other insurance" under which RSR successfully recovered for the full amount of its Harbor Island liabilities pursuant to its settlement agreements with the CGL insurers. Therefore, it concluded that Condition 8 of International's Environmental policies barred any further recovery. RSR argues that the district court erred because its CGL policies were not "other insurance" within the meaning of Condition 8 for two major reasons. First, RSR argues that a payment pursuant to a settlement agreement is not "insurance" and therefore does not qualify as "other insurance" under the plain language of the policy. Second, it argues that, even if a settlement payment could be considered insurance, Condition 8 would only apply if the Environmental policies issued by International covered the same liabilities as the CGL policies. RSR contends that the Environmental policies and the CGL policies covered different liabilities. The district court held that RSR was judicially estopped from making this argument, because RSR had argued successfully in the Harrison County action that the CGL and Environmental policies covered the same liabilities. RSR argues that the district court abused its discretion by finding that judicial estoppel was appropriate.

## A. Settlement Payments as "Other Insurance"

RSR contends that the district court erred by holding that a payment pursuant to a settlement agreement could be "other insurance" within the meaning of Condition 8. *See generally E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, No. 82 Civ. 7327(JSM), 1997 WL 251548, at *1 (S.D.N.Y. May 13, 1997), *aff'd*, 241 F.3d 154 (2d Cir. 2001) (holding that "settlement agreements

are not contracts of insurance"). This argument is beside the point. By its plain language, the triggering of Condition 8 requires only (1) the existence of "other insurance" insuring to RSR's benefit and (2) overlapping coverage between that other insurance and International's Environmental policies. The means by which actual recovery might be achieved under the other insurance in question, whether by settlement agreement or by judgment, is irrelevant to Condition 8's applicability. The existence of other insurance that covers the same liability as the Environmental policies is what triggers the condition, whether or not recovery under this other insurance is actually sought.

There is no dispute that RSR's CGL policies were insurance. Thus, the relevant question for the purposes of determining Condition 8's applicability in this case is not whether RSR's settlements were "insurance." The relevant question is whether RSR sought to recover for liabilities under its Environmental policies that were also "recoverable" under its CGL policies.

## B. "Recoverable" Under Other Insurance

RSR also argues that the district court erred by finding that Condition 8 barred recovery under the Environmental policies, because it asserts that the CGL and Environmental policies covered different liabilities. If this assertion were correct, Condition 8 would be inapplicable, since one of its triggering requirements is that "other insurance" cover the same "injury, loss, damage, costs or expenses" for which recovery is sought under the Environmental policies. However, the district court held that RSR was judicially estopped from asserting that the CGL and Environmental policies covered different liabilities, because it had argued successfully in the Harrison County action that the CGL and Environmental policies covered the same liabilities at Harbor Island. RSR argues that this application of judicial estoppel was an abuse of discretion.

"The doctrine of judicial estoppel prevents a party from asserting a

11

position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *Ergo Science, Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996). Although Texas law governs substantive matters in this case, we apply federal principles of judicial estoppel. *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 395–96 (5th Cir. 2003). For a party to be judicially estopped from asserting a position, two requirements must be met. *Ahrens v. Perot Systems Corp.*, 205 F.3d 831, 833 (5th Cir.2000). "First, it must be shown that 'the position of the party to be estopped is clearly inconsistent with its previous one; and [second,] that party must have convinced the court to accept that previous position.'" *Hall*, 327 F.3d at 396 (quoting *Ahrens*, 205 F.3d at 833) (brackets in original). We review a district court's application of judicial estoppel for abuse of discretion. *Id.* A district court abuses its discretion if it misapplies the law or bases its decision upon erroneous findings of fact. *Latvian Shipping Co. v. Baltic Shipping Co.*, 99 F.3d 690, 692 (5th Cir. 1996); *McGary v. Scott*, 27 F.3d 181, 183 (5th Cir. 1994).

Some of RSR's CGL policies excluded coverage for environmental liabilities, with the exception of environmental liabilities resulting from "sudden and accidental" events or "hostile fires," while the other CGL policies did not exclude environmental liability claims, but only covered accidents and occurrences. International's environmental policies only covered environmental liabilities, but excluded coverage for liabilities resulting from "sudden and accidental happening[s]" or "fire[s] or explosion[s]." Thus, a plain reading of the terms of the CGL and Environmental policies supports RSR's assertion that their coverage did not overlap.

However, in the Harrison County action, RSR took a very different position. There, RSR argued that the CGL policies' exception for "sudden and

accidental" occurrences could be satisfied by an occurrence that was not sudden, so long as it was accidental. RSR argued that the CGL policies covered "all forms of emissions causing pollution liabilities, *except* for those resulting from intentional pollution." (Emphasis in original.) It urged the Harrison County district court to hold that the CGL policies covered "all damages from unexpected and unintended releases, discharges, dispersals, and/or escapes of pollution." In a letter ruling dated March 19, 2003, the Harrison County district court granted RSR's request and held that "the 'sudden and accidental' exception provides coverage for all unexpected and unintended pollution."

In the present case, RSR attempted to avoid judicial estoppel by arguing that the Environmental policies covered "routine" environmental pollution, while the CGL policies covered "non-routine" pollution. The district court rejected this argument for two reasons. The first was that the terms "routine" and "non-routine" do not appear in either set of policies. The second reason was that RSR has never alleged that the pollution at Harbor Island was expected or intended.

We decline to find an abuse of discretion in the district court's holding for the same reasons. The Environmental policies have nothing to do with whether or not the pollution in question can be characterized as "routine." Their exclusions are triggered only where pollution occurred in a manner that was both sudden and accidental. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 554 (5th Cir. 2004) ("{U}nder Texas law, the [sudden and accidental] clause contains a temporal element in addition to the requirement of being unforeseen or unexpected. The sudden and accidental requirement unambiguously exclude[s] coverage for all pollution that is not released quickly as well as unexpectedly and unintentionally." (quoting *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193–94 (5th Cir. 1998)) (internal quotation marks and citation omitted) (material in braces added; material in brackets in original)).

13

Thus, the Environmental policies covered pollution that was accidental, but not sudden.

RSR clearly alleged in state court that its CGL policies covered all accidental pollution, whether or not it was sudden. RSR has not alleged that any of its pollution at Harbor Island was intentional.[5] Therefore, by implication, all of the pollution at Harbor Island was alleged to be accidental. Because RSR's original interpretation of the CGL and Environmental policies allowed accidental pollution to be covered under both policies, and because the only pollution alleged to have occurred at Harbor Island was accidental, we hold that the district court did not abuse its discretion by holding that RSR was estopped from arguing that the CGL and Environmental policies covered different liabilities.

## C. Possible Excess

If RSR's Harbor Island liabilities were only partially covered by its CGL settlements, Condition 8 would allow the Environmental policies to serve as excess insurance for the uncovered portion. Thus, the final issue we must confront in our analysis of the district court's dismissal under Condition 8 is whether or not the CGL settlements compensated RSR fully for its Harbor Island liabilities. RSR argues that it was not fully compensated for these liabilities by the CGL settlements. International responds that, even if this were true, it was RSR's burden under Texas law to allocate the settlement proceeds.

---

[5] This is not surprising, since intentional pollution at Harbor Island would likely be excluded from the Environmental policies under Exclusion 4 ("Liability for Environmental Impairment, arising out of the Insured's noncompliance with any valid and applicable statute, regulation or written instruction relating to Environmental Impairment issued by competent authority . . . .") or Exclusion 13 ("Liability arising from the deliberate and intentional dumping or disposal of toxic or radioactive substances in the open sea."). An admission by RSR that its pollution at Harbor Island was intentional also might have led to new difficulties with the EPA.

Because RSR failed to do this, International argues that Texas law presumes that the full amount of the CGL settlements must be allocated to liabilities that would also be covered under the Environmental policies. International collected over $76 million from its settlements with the CGL insurers. It only seeks $13.1 million from International for its Harbor Island liabilities. Therefore, if International is correct about Texas's presumptive allocation, then there is no excess to be covered under Condition 8, and we must affirm the district court's take-nothing judgment.

While the Supreme Court of Texas has not confronted the precise issue before us, we conclude that its opinion in *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917 (Tex. 1998), indicates how it would rule in this case. In *Ellender*, the family members of an independent contractor who died from exposure to benzene sued multiple parties whom they believed were responsible for his death. *Id*. at 920. All of the defendants except Mobil settled. *Id*. The jury returned a verdict for the plaintiffs. *Id*. At issue on appeal was the proper amount of the settlement credits that had to be subtracted from this verdict. *Id*. at 926. Specifically, the Supreme Court of Texas had to determine which side bore the burden of allocating the settlement amounts between actual and punitive damages.[6] *Id*.

The court began its analysis of the issue by noting that "settling plaintiffs are in a better position than nonsettling defendants to insure that the settlement award is allocated between actual and punitive damages." *Id*. at 928. It expressed concern that "[w]ithout an allocation, Mobil, who was not a party to the settlement, had almost no ability to prove which part of the settlement amount represented actual damages. Nonsettling parties should not be

_____

[6] This allocation was important because a defendant cannot receive credit for settlement amounts representing punitive damages. *Ellender*, 968 S.W.2d at 927 (citing Tex. Civ. Prac. & Rem. Code § 33.002(c)(2)).

15

penalized for events over which they have no control." *Id*.  It then examined the hazards inherent in the opposite rule:

> "When the settlement agreement does not allocate between actual and punitive damages, requiring a nonsettling party to prove the agreement's allocation before receiving a settlement credit not only unfairly penalizes the nonsettling party but also allows settling parties to abrogate the one satisfaction rule. . . .  Settling parties could prevent nonsettling parties from receiving settlement credit by refusing to allocate between actual and punitive damages in settlement agreements. . . .  The better rule is to require a settling party to tender to the trial court, before judgment, a settlement agreement allocating between actual and punitive damages as a condition precedent to limiting dollar-for-dollar settlement credits to settlement amounts representing actual damages." *Id*.

The court concluded that, where a settling party failed to allocate its settlement, the nonsettling party was entitled to a credit equaling the entire settlement amount. *Id*.

In our view, the situation in this case is analogous to the situation in *Ellender*.  Just as Mobil was not a party to any of the plaintiffs' settlements in *Ellender*, here International was not a party to any of RSR's settlement agreements or negotiations with its CGL insurers.  Just as the lack of an allocation could have led to a double recovery in *Ellender*, the lack of allocation could lead to a double recovery respecting the Harbor Island liabilities in this case.  International was unable to request, let alone require, that the CGL settlement agreements allocate the proceeds amongst RSR's various liabilities. International should not be penalized for the fact that no allocations were made. Nor should RSR be rewarded for failing to track each of its liabilities diligently through to the end of its negotiations.  Therefore, just as the Supreme Court of Texas placed the burden of uncertainty on the party to the settlement agreements in *Ellender*, so will we place it on the party to the settlements in this

16

case.

RSR argues that *Ellender* is inapplicable to this case because its logic relies on the vindication of the one satisfaction rule, which RSR argues is inapplicable outside of tort cases. *See CTTI Priesmeyer v. K & O Ltd. Partnership*, 164 S.W.3d 675, 684 (Tex. App.—Austin 2005, no pet.) (holding that the one satisfaction rule cannot be applied to breach of contract claims). *But see Galle, Inc. v. Pool*, 262 S.W.3d 564, 573–74 (Tex. App.—Austin 2008, pet. denied) (applying the one satisfaction rule in a case involving breach of contract claims); *Osborne v. Jauregui, Inc.*, 252 S.W.3d 70, 75 (Tex. App.—Austin 2008, pet. denied) (en banc) (holding that the application of the one satisfaction rule "is not limited to tort claims"). It argues that, on the facts of this case, the court would adopt the rule used in Washington, which places the burden of uncertainty on the nonsettling party. *See generally*, *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 126 (Wash. 2000). We disagree. The overall structure of the Texas Supreme Court's reasoning in *Ellender* indicates that the impact of its decision on the one satisfaction rule was a secondary consideration. The court's primary concerns were the disparity of information and the resulting unfairness inherent in requiring a litigant to bear the burden of allocating the proceeds of a settlement to which it had not been a party.

The solution the Supreme Court of Texas reached on this issue was far from novel. *See, e.g.*, *McCormick on Evidence* 950 (3d ed., Edward W. Cleary ed.,1984) (stating that a party often must carry the burden of proof on an issue when the facts with regard to the issue lie peculiarly within the knowledge of that party). As the court noted in *Ellender*, it is a result we have reached under similar circumstances. 968 S.W.2d at 928 (citing *McFarland v. Leyh*, 52 F.3d 1330, 1340 (*Texas Gen. Petroleum Corp.*) (5th Cir. 1995) (reasoning that a

17

plaintiff that is a party to the settlement agreement is in a better position than a nonsettling defendant to allocate damages in the settlement)). Because the settlement agreements in this case present the same disparities in information, we think the Supreme Court of Texas would apply the *Ellender* presumption to RSR's settlements with its CGL insurers. The CGL settlements yielded over $76 million in proceeds, all of which must be allocated to the Harbor Island liabilities before RSR could collect on its Environmental policies. Because the Harbor Island alleged liabilities only totaled $13.1 million, RSR can take nothing under the Environmental policies. Therefore, we hold that the district court did not err in finding that Condition 8 barred all recovery on the Environmental policies.

## CONCLUSION

For the foregoing reasons, we affirm the take-nothing judgment of the district court.

AFFIRMED.