# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 22, 2013

No. 12-30620

Lyle W. Cayce
Clerk

SHELLEY THOMAS,

Plaintiff - Appellant

v.

ITT EDUCATIONAL SERVICES, INCORPORATED,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:11-CV-544

Before JONES, BARKSDALE, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

After being fired from her position as an instructor at ITT Educational
Services, Inc. (ITT), Thomas sued ITT alleging a retaliation claim arising under
the False Claims Act (FCA), 31 U.S.C. § 3730(h), and state law retaliation claims
under La. Rev. Stat. § 23:967(A). The district court granted summary judgment
for ITT. We agree with the district court, which stated that Thomas did not
meet her burden to show that she engaged in protected activity under § 3730(h)
because "[a]lthough Thomas argues that her refusal to falsify grade records was

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

protected activity because she refused to do so to prevent ITT from making false claims to the government, Thomas has not provided any evidence, other than her own unsupported, conclusory allegations to support this contention." Additionally, Thomas did not raise a triable issue of fact as to the state law claims because she "put forth no evidence to show that she ever informed ITT that she believed its actions violated the law." Thomas appeals the adverse summary judgment. We **AFFIRM**.

## BACKGROUND

ITT hired Shelley Thomas as a part-time instructor in 2001.[1] She was promoted to full-time instructor later that year and worked at ITT for approximately nine years before she was fired in 2010.

During the summer 2010 academic quarter that was to be her last, many of Thomas's students failed to attend class, complete assignments, or pass tests. Students asked Thomas to accept late work or give credit without turning in assignments and those conversations became heated. On one occasion, Renee Hall, Associate Dean of General Studies and Thomas's immediate supervisor, overheard shouting between Thomas and two students. Students complained to Hall that Thomas was speaking to them in a disrespectful manner and would not allow them to turn in make-up work or late assignments. According to Thomas, Hall and Kenya Crocken-Waugh, then Dean of the St. Rose campus, wanted Thomas to accept late assignments and "just pass" a student and she told them that she would not do it and that "[i]t wasn't ethical." Thomas was reprimanded for speaking to students in a disrespectful tone. She was later reprimanded two more times. At a meeting in conjunction with one of the reprimands, Hall told Thomas to accept late work in accordance with ITT policy. The third and final meeting with Hall on September 2, 2010 was accompanied

---

[1] As we affirm the district court's decision solely on the basis that Thomas did not engage in protected activity under the FCA and did not advise ITT of a violation of the law as required under state law, we largely limit our recitation of the facts to Thomas's actions prior to being terminated.

by a final written warning.[2]   Thomas met with St. Rose Campus Director William Wells the next day.  Thomas brought paperwork to show that she had accepted late assignments,[3] but Wells refused to look at it.

Thomas did not return to campus after meeting with Wells.  She completed and signed a vacation request form but forgot to give it to Wells before leaving. While gone, she missed two mandatory meetings[4] and was absent for three consecutive work days.  Hall tried but was unable to reach Thomas by phone or email.  Thomas had gone out of town with her sister.  After she returned and checked her voice mail, she emailed Hall on September 9, stating that she had missed the mandatory meetings because she "was extremely ill."  Later that day, Crocken-Waugh called Thomas at home and, in a voice mail, stated that ITT considered her to have "voluntarily resigned" from her employment due to her unscheduled absences.  Thomas received a letter from Wells by mail a few days later formally confirming her termination, effective September 8.[5]

Thomas complained to both the Accrediting Council for Independent Colleges and Schools, the accrediting agency for ITT, and the ITT compliance department after she was terminated.  After Thomas was terminated, Hall reviewed late assignments for seven of Thomas's students and changed the final grades for four of those students.

## STANDARD OF REVIEW

We review "the district court's grant of summary judgment *de novo*, applying the same standards as the district court.  Summary judgment is

---

[2] At that meeting, Thomas disputed the claim in her written warning that she had refused to accept make up work.  Hall replied that the warning had been written before Thomas had accepted the work.

[3] Thomas had reviewed all of the late assignments and assigned final grades.

[4] Per Thomas, instructors were allowed to make up missed meetings online.

[5] Someone from ITT went to Thomas's desk and found the vacation request form after ITT finally got in touch with Thomas.

warranted if 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *DePree v. Saunders*, 588 F.3d 282, 286 (5th Cir. 2009). We must go beyond the pleadings and review the entire record presented to the district court to determine if the moving party was entitled to summary judgment. *Copeland v. Wasserstein, Perella, and Co., Inc.*, 278 F.3d 472, 477 (5th Cir. 2002).

## DISCUSSION

### I.    False Claims Act Whistleblower Provision

The district court granted summary judgment in favor of ITT for Thomas's retaliation claim under FCA § 3730(h), finding that Thomas did not submit evidence establishing any of the three required elements of a prima facie case. To establish a claim under § 3730(h), a party must show (1) that she was engaged in protected activity with respect to the False Claims Act; (2) that her employer knew she was engaged in protected activity; and (3) that she was discharged because she was engaged in protected activity. *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994). A protected activity is one motivated by a concern regarding fraud against the government. *See Riddle v. Dynocorp Int'l, Inc.*, 666 F.3d 940, 941 (5th Cir. 2012). Congress amended the FCA in 2009 "to provide relief to any employee discharged for acting 'in furtherance of other efforts to stop [one] or more violations of this subchapter.'" *United States ex rel. Patton v. Shaw Servs., LLC*, 418 Fed. App'x 366, 371 n.5 (5th Cir. 2011) (unpublished) (quoting Pub. L. No. 111-21, § 4(d), 123 Stat. 1617, 1624–25 (2009)). This court has not yet issued a published opinion interpreting the new language.

Even under a very solicitous reading of the new statutory language Thomas failed to establish she engaged in protected activity. We only look to

actions Thomas took before she was terminated.[6] Hall stated in her declaration that "Thomas never complained to me that anyone at ITT had asked her to do something illegal or unlawful." Thomas was directly asked at her deposition whether, before she received the voice mail from Crocken-Waugh informing her she had been terminated, she told Crocken-Waugh that she thought ITT was doing something illegal. Thomas replied that she "told both her and Renee" that what they asked of her "wasn't ethical." Thomas does not argue that it is illegal or even unethical to accept late work. In her deposition testimony, she even stated that "I will always accept late work," before adding the qualification "[t]o a certain point", and that she would not "give them full credit for late work." According to Thomas's own deposition testimony, when she insisted to Hall that she would only take some of one particular student's assignments (those due later in the quarter) and that those would be penalized, Hall responded "Well, okay." Thomas further stated that she was aware of only four of her students whose final grades had been changed.

Thomas had no knowledge which of her students were receiving federal funds to attend ITT, whether any of them were receiving state funds, what effect a failing grade would have on a student's federal loans, or how many failing grades a student had to receive to lose federal loans. Thomas indicated in her deposition testimony that she had no knowledge of the accreditation process.[7]

Thomas did not submit evidence establishing that she sought to pursue a *qui tam* action, that she informed anyone at ITT that its actions were illegal, or that she informed anyone at ITT that its actions were fraudulent. She

---

[6] While a court may not weigh the evidence or make credibility determinations when reviewing the record presented to it, *Perenco Nigeria, Ltd. v. Ashland, Inc.*, 242 F.3d 299, 304 (5th Cir. 2001), conclusory allegations, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not satisfy the plaintiff's burden. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

[7] Thomas's call to the ACICS cannot have been protected activity under the FCA because it occurred *after* ITT terminated her.

submitted evidence that she was only aware of four grades that were changed, and those grades were changed after ITT terminated her. Thomas did not submit evidence that ITT forced her to change grades. Rather, she states that ITT pressured her to accept late assignments and give credit for those assignments, something she admitted she would typically do. The point of disagreement was not over class averages or final grades or even accepting late work; it was over the credit given to tardily submitted assignments. Such internal policy matters are well beyond the reach of the FCA.[8]

Because Thomas failed to establish that she engaged in protected activity, we need not and do not reach the remaining two elements of a prima facie case under § 3730(h). The district court correctly granted summary judgment to ITT on Thomas's FCA claim.

## II.    Retaliation Claim Under Louisiana State Law

To establish Thomas's claims under La. Rev. Stat. §§ 23:967(A)(2) and (A)(3), she had to show that an employer took "reprisal against an employee who in good faith, and after advising the employer of the violation of law . . . [p]rovide[d] information or testifie[d] before any public body conducting an investigation, hearing, or inquiry into any violation of law" or "[o]bject[ed] to or refuse[d] to participate in an employment act or practice that is in violation of law."

Thomas did not submit any evidence that she advised ITT of a violation of the law. Thomas only told Hall and Crocken-Waugh that what they asked of her was "unethical." Thomas argues that "all parties knew that changing grades and reports was fraudulent conduct under State and Federal Law," but Thomas did not submit evidence that Hall and Crocken-Waugh asked her to change grades. She submitted evidence only that Hall and Crocken-Waugh pressured

---

[8] It should be noted that only Thomas's actions are relevant. Even assuming *arguendo* that ITT had a wide scale practice of pressuring instructors to inflate grades and of changing grades, to establish a claim Thomas must show that *she* engaged in protected activity.

her to accept and give credit for late assignments.  She did not create a genuine issue of material fact concerning a Louisiana law violation.

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**