# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-20215
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

April 3, 2014

Lyle W. Cayce
Clerk

MARIA ALMA VILLARREAL,

Plaintiff-Appellant,

v.

THE TEXAS A&M SYSTEM,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CV-433

Before STEWART, Chief Judge, and JOLLY and HIGGINSON, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant Maria Alma Villarreal ("Villarreal") appeals the district court's summary judgment in favor of The Texas A&M System ("Texas A&M") in an employment discrimination law suit alleging that Texas A&M wrongfully terminated her. For the reasons explained herein, we affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-20215

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Texas A&M University System is a statewide network of eleven universities, seven state agencies, and a comprehensive health science center. Villarreal is a Mexican-born United States citizen who began her career at Texas A&M in 1992 as a staff assistant in the Office of Community Development ("OCD").  In 2003, the OCD was completely eliminated as a result of a Reduction-In-Force ("RIF").  As a result, Villarreal and other OCD employees were terminated.  Shortly thereafter, Texas A&M created a position entitled Equal Employment Coordinator ("EOC") to absorb some of the responsibilities formerly held by the OCD.  The duties attendant to this position largely consisted of providing administrative support to the director of Texas A&M's Office of Equal Opportunity ("OEO").  Texas A&M offered Villarreal this position; she accepted it and began working on September 1, 2003.

Between 2003 and 2009, Texas A&M implemented numerous system-wide modifications to its administrative scheme.  As a result, many of the tasks that were initially performed by Villarreal as EOC were eliminated.  For example, in 2006, Texas A&M centralized certain features of its financial operations in a new department called the System Office of Budgets and Accounting.  Prior to the centralization, Villarreal was responsible for fiscal and budgetary tasks in the OEO.  Subsequent to the creation of the System Office of Budget and Accounting, Villarreal's fiscal and budgetary responsibilities decreased significantly.  Furthermore, in 2007, other administrative tasks that were originally performed by Villarreal were reassigned to a staff assistant for logistical reasons.

In light of these changes, Texas A&M performed a "job analysis" in 2009 to evaluate the scope and utility of Villarreal's position.  The analysis revealed that Villarreal only spent an average of eight hours per week performing

required job duties.  As a result, the Chancellor's Chief of Staff requested a RIF that resulted in the elimination of Villarreal's position.  The Chancellor approved the RIF, citing the significant changes in Villarreal's job responsibilities.  On January 13, 2010, Texas A&M informed Villarreal that her position would be eliminated and that her final date of employment was March 14, 2010.[1]

As permitted by Texas A&M's employment policies, Villarreal appealed her termination on the grounds that she was unlawfully discharged because of her disability, age, race, gender, and national origin.  Texas A&M denied the appeal.  Villarreal then filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  The EEOC investigated the complaint and was unable to conclude that the facts established violations of relevant employment laws.  Accordingly, the EEOC dismissed the complaint and provided Villarreal with notice of her right to sue in federal court.

Villarreal then filed a federal law suit alleging that Texas A&M terminated her because of her age, disability, and national origin.  Texas A&M moved to dismiss the age and disability claims and the district court granted the motion.  Texas A&M then moved for summary judgment on the national origin claim, arguing that: (1) Villarreal failed to present sufficient evidence from which a reasonable fact finder could conclude that Texas A&M unlawfully discriminated against her with respect to its RIF; (2) Villarreal failed to establish a prima facie case of discrimination because she was unable to demonstrate that she was qualified for another position at the time of her discharge; and (3) the RIF was based upon legitimate non-discriminatory reasons.  The district court agreed and entered summary judgment in Texas

---

[1] On May 3, 2010, Texas A&M hired Villarreal as a custodial supervisor—a position she maintained throughout this litigation.

No. 13-20215

A&M's favor.  The only matter before this court is Villarreal's challenge to the district court's summary judgment in favor of Texas A&M on her claim of national origin discrimination.

## II. DISCUSSION

### A.    Standard of Review

We review the district court's grant of summary judgment de novo, applying the same standard as the district court.  *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002) (citation omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Although we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial."  *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000) (citations and internal quotation marks omitted). "[C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment."  *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

### B.    Applicable Law

Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment on the basis of, *inter alia*, national origin.  42 U.S.C. § 2000e.  To establish a prima facie case of intentional discrimination in the RIF context, a plaintiff must establish the following elements: (1) she is a member of a protected class; (2) she was adversely affected by her employer's decision; (3) she was qualified to assume another position at the time of her termination; and (4) there is sufficient evidence from which a fact finder may reasonably

4

conclude that the employer intended to discriminate against her. *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).

If the plaintiff establishes a prima facie case, the burden shifts to the employer to assert a legitimate non-discriminatory reason for the employment action. *Id.* If the employer posits a legitimate non-discriminatory reason for its employment action, then the plaintiff has an opportunity to demonstrate that there is an issue of fact as to whether the defendant's stated reasons are pretextual or that the reasons, while true, are part of a mixed-motive that includes unlawful discrimination. *See Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004).

### C.    Analysis

"The ultimate question in every employment discrimination case . . . is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 153 (2000). This case is no different. To answer this question, we must first determine whether Villarreal has established a prima facie case of discrimination based upon her national origin. The first two elements of the analysis are undisputed. Villarreal sufficiently established that she is a member of a protected class and was adversely affected by her employer's decision. We discuss the remaining elements in turn.

The third element of a prima facie case queries whether the aggrieved employee was qualified to assume another position at the time of her termination. Villarreal argues that her ability to serve as EEO Coordinator for seven years demonstrates that she was qualified for other positions at Texas A&M such as "staff assistant" and "administrative assistant." We disagree. There is no information in the record with respect to the qualifications necessary to obtain these positions. Villarreal urges the court to infer that because she worked in an administrative capacity in one office, she

was qualified to work in an administrative capacity at any office within the entire Texas A&M System. Granted, we are required to draw all *reasonable* inferences in the light most favorable to Villarreal. However, we are not convinced that the inference she proffers is reasonable. As stated previously, the Texas A&M University System is a statewide network of eleven universities, seven state agencies, and a comprehensive health science center. We do not believe it is reasonable to assume that every staff assistant position or every administrative assistant position throughout the system requires the same skills and proficiencies. The record is devoid of any evidence demonstrating that Villarreal met the objective qualifications for these positions. Therefore, we conclude that she fails to satisfy this element of a prima facie case of discrimination.

We also conclude that Villarreal failed to satisfy the final element of a prima facie case, that is, that Texas A&M intended to discriminate against her based upon her national origin. Beyond Villarreal's conclusory allegation that she was terminated because of her Mexican heritage, the record is devoid of any factual information demonstrating Texas A&M's discriminatory intent. Therefore, we conclude that Villarreal failed to satisfy this element of a prima facie case as well.

We note that even if we concluded that Villarreal established a prima facie case of discrimination, Texas A&M provided a legitimate non-discriminatory reason for its RIF. After performing its job analysis, Texas A&M concluded that Villarreal's job responsibilities only required eight hours of work per week. The record demonstrates that similar analyses were performed in the past at Texas A&M and numerous other employees, of varying national origins, were terminated by way of a RIF. We have stated that a RIF is a legitimate non-discriminatory reason to relieve an individual of their employment. *See E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181

(5th Cir. 1996).  There is no information in the record that creates a fact issue as to whether the RIF was a pretext for Texas A&M's efforts to discriminate against Villarreal based upon her national origin.

"Summary judgment is proper 'where a party fails to establish the existence of an element essential to h[er] case and on which [s]he bears the burden of proof.'" *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) (citing *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988).  Villarreal failed to establish two elements essential to her case.  Texas A&M also provided a legitimate non-discriminatory reason for its decision to terminate Villarreal.  Accordingly, we conclude that the district court properly entered judgment in favor of Texas A&M on Villarreal's claim of discrimination based upon national origin.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's summary judgment in favor of Texas A&M.