# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-50544
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
November 3, 2015

Lyle W. Cayce
Clerk

REGINA E. VARGAS,

      Plaintiff - Appellant

v.

JOHN M. MCHUGH, Secretary Department of Army,

      Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:12-CV-334

Before KING, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

      Plaintiff–Appellant Regina Vargas brought a claim of retaliation pursuant to Title VII of the Civil Rights Act of 1964 against John M. McHugh, arising from a decision by United States Army officials to not hire Plaintiff for an information technology position in 2009.  On appeal, Plaintiff challenges

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-50544

the district court's grant of summary judgment. For the following reasons, we AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

From 2002 to 2007, Regina Vargas, a civilian, worked as an information technology (IT) specialist at the Army's Directorate of Information Management (DOIM) at Fort Hood, Texas. In July 2007, Vargas filed a formal complaint alleging discrimination based on race, color, age, and reprisal for participating in equal employment opportunity (EEO) activities. In September 2007, Vargas and the Army settled the complaint by agreeing that, in exchange for a lump-sum payment, Vargas would resign her position and would "neither seek [n]or be considered for future federal or contractor employment within the [DOIM] at Fort Hood."

After resigning and receiving the settlement payment, Vargas sent two emails to former coworkers. The first email referred to a former supervisor as a "crazy woman," and shared information regarding the settlement payment. The second email included similar language and stated that Vargas would create a website for a former coworker "on how to steal another man's wife." Following these emails, a memorandum was included in Vargas's file, noting that the post-employment emails "exhibited a significant lack of judgment on [Vargas's] part."

In late 2008, Vargas applied for an IT position with the Army's 120th Infantry Brigade, which was moving to Fort Hood. Vargas was not selected for the position, but the hiring official asked if Vargas would be interested in a lower-level position. Vargas replied that she would be interested. The hiring official asked her why she was no longer working at the DOIM, but Vargas did not disclose all of the circumstances surrounding her departure, instead mentioning family obligations and stress.

2

No. 15-50544

After a human resources specialist extended a tentative offer, the personnel office checked Vargas's qualifications and suitability. ROA.233–36, 299. During that check, several problems were uncovered. ROA.313. First, a review of Vargas's résumé found numerous alleged exaggerations. Second, Vargas represented on an employment form that she had not "[left] any job by mutual agreement because of specific problems," when in fact she had resigned from her previous Army position by mutual agreement. Third, the human resources specialist learned that Vargas would not be granted specialized computer access, known as "elevated privileges," necessary to perform the prospective job because Vargas's post-resignation emails had shown a significant lack of judgment. Finally, the settlement agreement, which Vargas had signed, was interpreted as barring Vargas from any position under DOIM oversight, including the position she sought. On January 12, 2009, the specialist reported all of these findings to the hiring official, and the hiring official withdrew the tentative officer the following day.

In March 2009, Vargas filed a formal complaint alleging that the withdrawal of the tentative offer was reprisal for her 2007 EEO activity. The Army's EEO investigator found no wrongdoing. Vargas then went before an administrative judge for the Equal Employment Opportunity Commission (EEOC), who held a hearing and concluded that "the reasons given by the [Army] for withdrawing the job offer to [Vargas] were not shown to be pretext for retaliatory motives." Vargas appealed to the EEOC's Office of Federal Operations, which reviewed the case and affirmed the administrative judge's conclusion.

On December 11, 2012, Vargas filed suit against the Secretary of the Army in the United States District Court for the Western District of Texas. On April 8, 2013, Vargas filed a motion to amend her complaint, which the district court treated as an amended complaint. The amended complaint brought

3

claims of discrimination based on race, age, and retaliation, pursuant to Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967.

On May 13, 2015, the district court granted the Army's motion for summary judgment. On the retaliation claim, the district court explained that Vargas had to rely on circumstantial evidence because she had offered no direct evidence of retaliation. The district court found that Vargas had failed to establish a prima facie case for retaliation because she had not shown a causal connection between her EEO activity and the Army's decision not to re-hire her. The district court also found that Vargas had not rebutted the reasons articulated by the Army for not re-hiring her. On the age and race discrimination claims, the district court found that Vargas had failed to exhaust her administrative remedies because she had never raised those claims before filing suit. Accordingly, the district court granted summary judgment on all claims, and entered judgment the same day. Vargas timely appealed.

## II. STANDARD OF REVIEW

On appeal, Vargas contends that the district court erred in granting summary judgment on her retaliation claim. We review a grant of summary judgment *de novo*, applying the same standard as the district court. *Feist v. La., Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts and evidence are viewed in the light most favorable to the nonmovant. *Feist*, 730 F.3d at 452. "However, conclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). "Rather, the party opposing the summary judgment

No. 15-50544

is required to identify specific evidence in the record and to articulate precisely how this evidence supports [her] claim." *Id.*

### III.   RETALIATION CLAIMS UNDER TITLE VII

The anti-retaliation provision of Title VII forbids employers from discriminating against a job applicant because she has "'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)).[1]  Title VII claims of unlawful retaliation based on circumstantial evidence are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973).[2]  First, plaintiff must establish a prima facie case of retaliation by showing "that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a

---

[1] The statutory text of the Title VII anti-retaliation provision provides, in full:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

[2] Vargas contends on appeal that there is direct evidence of retaliation. However, the evidence cited by Vargas does not constitute direct evidence. The evidence cited is the closing argument of Vargas's attorney during the EEOC hearing. Moreover, while other evidence in the record shows that individuals may have had knowledge of Vargas's prior EEO activity, that evidence alone is insufficient to show retaliatory animus without inference or presumption. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) ("Direct evidence is evidence which, if believed, proves the fact without inference or presumption."). We therefore analyze Vargas's claim as based on circumstantial evidence. *See Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001) (analyzing similar evidence under the *McDonnell Douglas* burden-shifting framework).

causal connection exists between the protected activity and the adverse action." *Feist*, 730 F.3d at 454. "If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate nondiscriminatory or nonretaliatory reason for its employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). Finally, "the plaintiff then bears the ultimate burden of proving that [each of] the employer's proffered reason[s] is not true but instead is a pretext for a real discriminatory or retaliatory purpose." *Id.*

The parties here disagree whether Vargas has raised a genuine dispute that a "causal connection" exists between the protected activity and adverse action. Temporal proximity between the protected activity and the adverse action can prove the causation element "when the protected act and the adverse employment action are 'very close' in time." *Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). "However, we have made clear that 'the mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case.'" *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004) (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 n.3 (5th Cir. 1997)). While a *five-day* time lapse is sufficient to show a causal connection*, Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001), a *five-month* lapse is too great a gap, standing alone, to show causation. *Feist*, 730 F.3d at 454 (citing *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002)). Here, the gap was approximately *fifteen months* between Vargas's activity and the withdrawal of her job offer. Thus, the temporal lapse was too great, standing alone, to raise a genuine dispute of causation. *Jackson v. Honeywell Intern., Inc.*, 601 F. App'x 280, 286–87 (5th Cir. 2015) (unpublished) (holding that a fifteen-month gap was insufficient to establish causation).

No. 15-50544

A plaintiff may be able to show a causal connection despite a significant time gap if there is other evidence of retaliation. *See Feist*, 730 F.3d at 454–55 (noting that a five-month lapse was insufficient to show causation "without other evidence of retaliation"); *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42–44 (5th Cir. 1992) (upholding a finding of causation based on other evidence even though fourteen months passed between the protected activity and the adverse action). "Such evidence may include an employment record that does not support [the employer's action], or an employer's departure from typical policies and procedures."[3] *Feist*, 730 F.3d at 454–55. However, Vargas has not shown that the employment record did not support the employer's action; in fact, the record contained a memorandum noting that post-employment emails sent by Vargas "exhibited a significant lack of judgment." Nor has Vargas pointed to any express policy not followed by the Army. *See Blow v. San Antonio*, 236 F.3d 293, 295, 297 (5th Cir. 2001) (noting that the employer had "intentional[ly] and deliberate[ly] depart[ed] from *stated* policies" (emphasis added)). The only "evidence" cited by Vargas is her attorney's closing argument at the EEOC hearing. However, the undisputed evidence in the record shows that résumé reviews by former supervisors were a routine part of the inquiry into prospective employees' qualifications and suitability and that at least one other job offer was withdrawn after such a review. *See Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009) (noting that "unsworn attorney argument to the contrary . . . is not evidence and cannot rebut" other

---

[3] Vargas also argues that causation may be established through circumstantial evidence showing that the employer's decision was based in part on the knowledge of the employee's protected activity. *Medina*, 238 F.3d at 684. However, we will not consider this argument because it was raised for the first time on appeal. *See Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 342 (5th Cir. 1999). Furthermore, even if this argument were to raise a genuine dispute as to causation, Vargas has nonetheless failed to show that the Army's reasons were pretextual.

evidence).  The district court therefore did not err in finding that Vargas had failed to establish a prima face case of retaliation.[4]

Furthermore, Vargas has also failed to show that the nonretaliatory reasons presented by the Army were pretextual.  To show that the employer's reason is actually a pretext for retaliation, the applicant must show "that the adverse action would not have occurred 'but for' the employer's retaliatory motive."  *Feist*, 730 F.3d at 454 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)).  "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity."  *Id.* (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996)).  In particular, "the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer."  *McCoy*, 492 F.3d at 557.

The Army produced four legitimate, nonretaliatory reasons for its employment action: (1) the settlement agreement's terms, (2) exaggerations on Vargas's résumé, (3) a false statement on Vargas's employment forms, and (4) lack of elevated privileges.  *See id.* at 556 (stating that an employer meets its burden of production if it can "articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action").  On appeal, Vargas failed to raise any argument that the third reason—the false statement on her employment forms—was pretextual.  Vargas has therefore abandoned this argument.  *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.").

---

[4] While Vargas contends that "blacklisting" can function as a form of retaliation, the authority cited by Vargas relates to defamation claims and property interest claims under the Due Process Clause.  Vargas has not explained how such authority relates to Title VII retaliation claims nor has Vargas cited any relevant Title VII precedent on this issue from the Fifth Circuit.  Vargas has therefore failed to adequately brief this argument and has waived it.  *United States v. Scroggins*, 599 F.3d 433, at 446–47 (5th Cir. 2010).

No. 15-50544

Because Vargas has failed to rebut every reason articulated by the Army, the district court did not err in granting summary judgment as to Vargas's retaliation claim.[5]

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[5] Moreover, even if Vargas had shown on appeal that the false statement reason was pretextual, her retaliation claim would still fail because she has not shown that the résumé exaggeration reason was pretextual.  In her brief, Vargas conceded that at least some aspects of her résumé were exaggerated.  And, as discussed above, Vargas has failed to raise a genuine dispute that the Army departed from its typical policies and procedures in having her résumé reviewed by former supervisors.